UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

| | |
|---|---|
| **STUDENTS FOR JUSTICE IN PALESTINE AT THE UNIVERSITY OF <u>SOUTH</u> FLORIDA,**<br><br>Plaintiff,<br><br>v.<br><br>**RONALD DESANTIS, et al.,**<br><br>Defendants. | Case No. 1:23-cv-281<br><br>Hon. Robert L. Hinkle<br><br>Magistrate Hope T. Cannon |

**PLAINTIFF'S MEMORANDUM OF LAW
<u>SUPPORTING MOTION FOR PRELIMINARY INJUNCTION</u>**

## Table of Contents

PLAINTIFF'S MEMORANDUM OF LAW ............................................................. 1
SUPPORTING MOTION FOR PRELIMINARY INJUNCTION ............................ 1
INTRODUCTION AND FACTUAL BACKGROUND ........................................... 1
ARGUMENT .............................................................................................................. 4
   I.   USF SJP is Substantially Likely to Succeed on the Merits of its Claim that the Deactivation Order Violates the First Amendment. ........................................ 5
      A.  The Deactivation Order Flouts the U.S. Supreme Court's Decision in *Healy v. James*................................................................................................. 6
      B.  Under *Healy*, Defendants Cannot Constitutionally Deactivate USF SJP For Sharing a Name with National SJP. ............................................................. 7
      C.  Defendants Cannot Offer an Alternative Justification for Deactivation that Survives First Amendment Scrutiny. ........................................................... 9
      D.  Any Allegation that USF SJP has Engaged in Material Support for Terrorism is Baseless and Cannot Justify the Deactivation Order. ............ 11
      E.  Defendants Also May Not Require USF SJP to Take Loyalty Oaths or Issue Compelled Disavowals of Protected Speech or Association. ..................... 12
   II.  Without an Injunction, USF SJP Will be Irreparably Harmed. .................... 13
   III.  The Remaining Factors Weigh in Favor of an Injunction. ........................... 14
CONCLUSION ....................................................................................................... 15

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Baird v. State Bar of Ariz.*,
   401 U.S. 1 (1971) ................................................................................................. 13

*Boim v. Quranic Literacy Inst.*,
   291 F.3d 1000 (7th Cir. 2002) ............................................................................... 12

*Charles H. Wesley Educ. Found., Inc. v. Cox*,
   408 F.3d 1349 (11th Cir. 2005) ............................................................................... 4

*Democratic Exec. Comm. of Fla. v. Lee*,
   915 F.3d 1312 (11th Cir. 2019) ....................................................................... 14, 15

*Gay Lesbian Bisexual All. v. Pryor*,
   110 F.3d 1543 (11th Cir. 1997) ............................................................................. 10

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010) ................................................................................................. 12

*Roman Cath. Diocese v. Cuomo*,
   141 S. Ct. 63 (2020) ............................................................................................. 14

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
   515 U.S. 819 (1995) ............................................................................................. 10

*Shelton v. Tucker*,
   364 U.S. (1960) .................................................................................................... 15

*Speech First, Inc. v. Cartwright*,
   32 F.4th 1110 (11th Cir. 2022) ..................................................................... 5, 9, 15

*W. Virginia State Bd. of Educ. v. Barnette*,
   319 U.S. 624 (1943) ............................................................................................. 10

**Statutes**

18 U.S.C. § 2339 ........................................................................................................ 11

Fla. Stat. 775.33 ......................................................................................................... 11

## INTRODUCTION AND FACTUAL BACKGROUND

On October 24, 2023, Defendant Ray Rodrigues, Chancellor of the State University City of Florida, acting in consultation or at the direction of Defendant Governor DeSantis, issued a memorandum (the "Deactivation Order" or "Order"), which purported to "deactivate" chapters of Students for Justice in Palestine on campuses in Florida's state university system. There are two such chapters in the state university system. Plaintiff's chapter, at the University of South Florida in Tampa is one; the other is at the University of Florida in Gainesville. The Deactivation Order targeted both groups.

A copy of the Deactivation Order is attached as Exhibit 1. The Order attempts to justify the mandated deactivation by stating that:

(a) Hamas was responsible for an attack on Israel on Oct. 7, 2023;

(b) In the wake of that attack, a group called National Students for Justice in Palestine ("National SJP") released a "toolkit," referring to the attack as "resistance" and also stating that "Palestinian students in exile" are "PART of this movement, not in solidarity with this movement";

(c) With those statements, National SJP "affirmatively identified" itself with a terrorist led attack; and

(d) "*Based on the SJP National's support of terrorism*," the "student chapters" in Florida, which "exist under the headship" of National Students for Justice in Palestine, "must be deactivated."

*See* Exhibit 1 (emphasis added).

If it were deactivated, USF SJP would stand to lose, among other things, the following benefits accorded to registered student organizations: (a) university

funding, on which USF SJP depends for its operations, (b) the ability to reserve and hold events in university facilities, and (c) access to university fora, such as BullsConnect, to advertise its events and communicate with students on campus. USF SJP Declaration (Exhibit 2) ¶ 7.

The Deactivation Order does not claim that USF SJP violated any state or federal law or university policy. *Id.* Nor does it allege that USF SJP adopted, endorsed, or used the National SJP toolkit. *Id.* And the Order does not suggest that USF SJP was involved in or consulted about the conception or drafting of NSJP's toolkit. USF SJP Declaration (Exhibit 2) ¶ 21. As such, the Order calls for deactivating USF SJP based solely on accusations leveled against National SJP. Exhibit 1.

In other words, the Deactivation Order does not directly accuse USF SJP of any wrongdoing. Instead, without evidence, the Order postulates that USF SJP exists "under the headship" of National SJP. Exhibit 1. But, in fact, USF SJP is fully autonomous from National SJP. USF SJP Declaration ¶ 14. USF SJP does not receive funding from National SJP. *Id.* ¶ 15. USF SJP does not pay dues to National SJP. *Id.* ¶ 16. USF SJP has no financial relationship with National SJP. *Id.* ¶ 17. USF SJP has no formal relationship with National SJP. *Id.* ¶ 18. USF SJP does not act under the direction of National SJP. *Id.* ¶ 17, 18. USF SJP operates pursuant to a

2

governing document, its constitution. By the terms of that document, USF SJP is affiliated with no other organizations. *See* Ex. 2, Article II.

USF SJP is a law-abiding, peaceful student organization that has never provided material support to any designated foreign terrorist organization or been affiliated with an organization that has done so. USF SJP Declaration ¶ 19. USF SJP was organized and has operated to:

- Raise awareness on campus of the effects of Israel's occupation of the West Bank and blockade and siege of Gaza, the apartheid system imposed by Israel, and the fundamental rights of the Palestinian people, including their right, enshrined in United Nations Resolution 194, to return to their homes and property;

- Bring USF students together to peacefully express their views on Israel and Palestine;

- Bring students at USF together to celebrate Palestinian culture; and

- Provide a safe space for these activities on campus.

USF SJP Declaration ¶ 20.

Since the beginning of the Fall 2023 semester, USF SJP has officially hosted only one on-campus event—a bake sale—and has not organized protests or any other activities on campus. Nor has USF SJP posted any material on social media in connection with the National SJP's "Day of Resistance Toolkit." Since October 7th, USF SJP has taken public steps to explain that its goal is to "promote peace" and that USF SJP "condemns all forms of violence." Exhibit 3. The Deactivation Order is a groundless restriction on USF SJP's First Amendment rights. As explained

below, USF SJP is overwhelmingly likely to succeed on the merits of its challenge to the Order, will suffer irreparable injury in the absence of this Court's intervention, and can show that the injunction sought is equitable and in the public interest.

## ARGUMENT

The familiar standards for preliminary injunctive relief require a plaintiff to establish that "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant[s] outweighs whatever damage the proposed injunction may cause to the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1354 (11th Cir. 2005) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc)). In each case, courts must balance the competing claims of injury and consider the effect of granting or withholding the requested relief, paying particular attention to the public consequences. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001) ("The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly

adjudicated."). The movant need not prove his case in full at the preliminary injunction hearing, and the findings of facts and conclusions of law made at this stage are not binding at trial on the merits. *Camenisch*, 451 U.S. at 395.

All four prongs of that standard are satisfied here.

### I. USF SJP is Substantially Likely to Succeed on the Merits of its Claim that the Deactivation Order Violates the First Amendment.

"Nowhere" are free speech and association "more important than in our leading institutions of higher learning." *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1128 (11th Cir. 2022). And "[t]here can be no doubt that denial of official recognition, without justification, to college organizations burdens or abridges" the rights protected by the First Amendment. *Healy v. James*, 408 U.S. 169, 181 (1972). Where, as here, the "practical effect of nonrecognition" includes "the denial of use of campus facilities for meetings and other appropriate purposes," as well as university funding and access to university fora, the First Amendment protects student groups from "being stifled" by official deactivation. *Id.* at 183 (quoting *Bates v. City of Little Rock*, 361 U.S. 516, 523 (1960)). Specifically, the First Amendment demands that public officials carry "a heavy burden … to demonstrate the appropriateness" of deactivation. *Id.* at 184 (internal quotation marks omitted).

Defendants cannot carry that heavy burden here. The Deactivation Order unconstitutionally seeks to deactivate USF SJP on the basis of: (1) USF SJP's constitutionally protected and, in any event minimal, association with National SJP,

5

Case 1:23-cv-00281-RH-HTC   Document 39   Filed 11/22/23   Page 9 of 20

and (2) hostility to the viewpoints expressed by National SJP. Under these circumstances, the Deactivation Order violates the First Amendment.

### A. The Deactivation Order Flouts the U.S. Supreme Court's Decision in *Healy v. James*.

The Supreme Court foreclosed the constitutionality of the Deactivation Order over fifty years ago in *Healy v. James*, 408 U.S. 169 (1972), which presented facts nearly on all fours with this case. There, in September 1969, students at a state-supported college in Connecticut had wanted to form a local chapter of Students for a Democratic Society (SDS). The university president, however, was concerned about "the relationship between the proposed local group and the National SDS organization," *id.* at 172, because he perceived the national organization, "loose and divided though that organization may be," to espouse "aims and [a] philosophy … which include disruption and violence." *Id.* at 174. As a result, the university president believed that a local chapter would adhere to "at least some of the major tenets of the national organization." *Id.* at 174 n.4.

The Court held that the university president's refusal to recognize the local SDS chapter violated the First Amendment. The Court acknowledged that there had been "a climate of unrest," including "widespread disobedience on some campuses, accompanied by the seizure of buildings, vandalism, and arson," for which "SDS chapters on some … campuses had been a catalytic force," but still held that state action denying rights and privilege "solely because of … "association with an

6

unpopular organization" was "guilt by association" and constitutionally impermissible; that "as repugnant as" campus administrators many consider a group's alleged view, those views "afford[ ] no reason" to deny First Amendment rights; and that even if a national group or a local affiliate "advocate[d] a philosophy of 'destruction,'" that would be "immaterial" because state actors "may not restrict speech or association because [they] find the view expressed by any group to be abhorrent." *Id.* at 187-88. The Court also noted that, just as here, the University had come forward with no "evidential basis to support" any "substantial threat." *Id.* at 189.

Applying *Healy*, the same conclusions apply here. And as a result, USF SJP has, at the very least, a substantial likelihood of success on the merits of its First Amendment claim.

### B. Under *Healy*, Defendants Cannot Constitutionally Deactivate USF SJP For Sharing a Name with National SJP.

Under *Healy*, when public university officials deactivate or threaten to deactivate a student group because of that group's alleged ties to a different organization, "[t]he government has the burden of establishing a knowing affiliation with an organization possessing unlawful aims and goals." 408 U.S. at 186; *see also id.* at 185-86 (emphasizing that "the Court has consistently disapproved government action imposing criminal sanctions or denying rights and privileges solely because

7

of a citizen's association with an unpopular organization."). Presumptions of guilt by association are not enough.

In *Healy*, university officials flunked that test because the only significant link between SDS nationally and the local chapter was the SDS name. Here, likewise, the names overlap, but there is no other basis for imputing statements or activities of National SJP to USF SJP. As Defendant Rodrigues himself recently acknowledged, "[t]he constitutions of both" SJP chapters on state campuses in Florida, including USF SJP, "clearly state their organization is not subservient or under national Students for Justice in Palestine."[1] Indeed, if there were doubt that a major impetus behind the Deactivation Order is USF SJP's use of the same name as National SJP, that doubt should be dispelled by a meeting convened by USF's Dean of Students, Danielle McDonald, with USF SJP on October, 31, 2023. She asked whether USF SJP would consider *changing its name* to allay concerns. USF SJP Declaration ¶ 23.

That USF SJP happens to share a name with a different unaffiliated organization does not come close to a "knowing affiliation" with that organization. Just as the SDS chapter in *Healy* could not be penalized for using the same name as

---

[1] Florida Board of Governors Meeting at 2:31:18, Fla. Channel (Nov. 9, 2023), https://thefloridachannel.org/videos/11-9-23-florida-board-of-governors-meeting; *see also* Denise Royal and Steve Contorno, *Florida University System Says It Has Not Deactivated Students for Justice in Palestine Chapters*, CNN (Nov. 9, 2023), https://www.cnn.com/2023/11/09/politics/florida-students-for-justice-in-palestinechapters.

8

other SDS organizations, so, too, USF SJP cannot be penalized for using a name that overlaps with National SJP.

### C. Defendants Cannot Offer an Alternative Justification for Deactivation that Survives First Amendment Scrutiny.

Given that Defendants' sole proffered justification for their planned deactivation of USF SJP is completely factually false, Defendants may attempt to offer new justifications for the deactivation in this Court. Any such attempt will fail because there are no grounds for deactivation available here that will survive First Amendment review.

For starters, to the extent Defendants seek to deactivate USF SJP because they disagree with USF SJP's avowed support for the Palestinian people or other expressed political positions, "[t]he mere disagreement of [Defendants] with the group's philosophy affords no reason to deny it recognition." *Healy*, 408 U.S. at 187. Rather, a public university, "acting here as the instrumentality of the State, may not restrict speech or association simply because it finds the views expressed by any group to be abhorrent." *Id.* at 187-88. USF SJP has a right, robustly protected by the First Amendment, to peacefully express their views on Palestine (and any other matters of public concern) without fear of deactivation or other sanction by the state. "Viewpoint discrimination is ... anathematic to the First Amendment." *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1126 (11th Cir. 2022). Accordingly, if Defendants want to disclaim hostility to USF SJP because of its name and, instead, defend that

9

they are censoring USF SJP because of its views (or, more accurately, for views they *impute* that USF SJP may hold *because of its name*), the First Amendment will still be violated.

The "bedrock of First Amendment principle" is that "[s]peech may not be banned on the ground that it expresses ideas that offend" the state. *Id.* Defendants may not constitutionally deactivate USF SJP for its viewpoint(s). *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion." *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). "Viewpoint discrimination is . . . an egregious form of content discrimination. The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger*, 515 U.S. at 829; *see also, e.g.*, *Gay Lesbian Bisexual All. v. Pryor*, 110 F.3d 1543 (11th Cir. 1997) (holding that a statute prohibiting any college or university from spending public funds to sanction, recognize, or support any group that promotes lifestyle or action prohibited by sodomy and sexual misconduct laws imposed a viewpoint-based restriction on access to a limited public forum, in violation of the First Amendment).

Even if USF SJP endorsed the views contained in the National SJP toolkit—and it does not—the First Amendment would prohibit Defendants from silencing or punishing USF SJP's independent adherence to or expression of those views. Still less can Defendants silence USF SJP merely because it associates with a group that has expressed views that Defendants reject.

### D. Any Allegation that USF SJP has Engaged in Material Support for Terrorism is Baseless and Cannot Justify the Deactivation Order.

The Deactivation Order suggests that statements in National SJP's toolkit constitute violations, all by themselves, of Florida's felony criminal statute barring material support for terrorism. Fla. Stat. 775.33 (Providing material support or resources for terrorism to terrorist organizations). See Exhibit 1. But like the federal statute on which it is based, 18 U.S.C. § 2339, Florida's terrorism support statute, Fla. Stat. 775.33, criminalizes providing "material support or resources" to a "designated foreign terrorist organization." The Deactivation Order offers no evidence that USF SJP has done any such thing.

As a threshold matter, USF SJP falls outside the scope of the material support statute because the Order offers no evidence that USF SJP has provided anything to any foreign organization. Even taking the Order's baseless allegations as true, National SJP is neither a foreign organization nor a designated terrorist organization. Even more foundationally, the Order offers no evidence that USF SJP has provided

"material support or resources" to any organization, terrorist or non-terrorist, domestic or foreign.

Even if we departed from reality to assume that USF SJP had "praise[d] Hamas, and vigorously advocated the goals and philosophies of Hamas," *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1026 (7th Cir. 2002)—and to be clear, Defendants have offered no evidence that USF SJP has ever done either—that would not constitute "material support." *Id.* Under the material support statute, plaintiffs may say anything they wish on any topic." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 25 (2010); *see also id.* at 31-32 ("Independent advocacy that might be viewed as promoting [a designated foreign terrorist organization's] legitimacy is not covered.").

Finally, even as they baselessly assert that SJP's "toolkit" qualifies as "material support or resources," which it does not, *id.* at 25, Defendants have offered no evidence at all that that "toolkit" was developed or issued by National SJP in "coordination with, or at the direction of" Hamas, as the First Amendment requires. *See id.* at 26 (noting that to avoid regulating pure political speech, which would be impermissible, the statute must be construed to cover only a narrow category of speech "under the direction of, or in coordination with foreign groups that the speaker knows to be terrorist organizations").

### E. Defendants Also May Not Require USF SJP to Take Loyalty Oaths or Issue Compelled Disavowals of Protected Speech or Association.

12

The Deactivation Order notes that USF SJP "may form another organization that complies with Florida state statutes and university policies." Ex. 1. As already discussed, the Order does not provide any evidence at all that USF SJP is not currently complying with Florida state statutes and university policies. And considering the Dean of Students' inquiry about whether USF SJP would change its name and the absence of any evidence of violations of state statutes or university policies, the odd reference to the possibility of "form[ing] another organization" seems to suggest a name change. In any event, Defendants may not condition continued recognition of USF SJP, or their willingness not to deactivate the organization, on: (a) a name change, or (b) oaths that they will "reject violence," "condemn Hamas," or anything similar. Any such compelled speech on particular topics is prohibited by the First Amendment—and would be even if it were required of all student organizations and not just organizations advocating for Palestinian rights or with the name "Students for Justice in Palestine." The views of individuals and of groups are "inviolate." *Baird v. State Bar of Ariz.*, 401 U.S. 1, 6 (1971). Actions may be regulated; beliefs may not.

## II.   Without an Injunction, USF SJP Will be Irreparably Harmed.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes an irreparable injury." *Roman Cath. Diocese v. Cuomo*, 141 S. Ct. 63, 67 (2020) (quoting *Elrod* v. *Burns*, 427 U. S. at 373); *Democratic*

13

*Exec. Comm. of Fla.*, 915 F.3d at 1327 ("[A]n ongoing violation of the First Amendment constitutes an irreparable injury") (quoting *Ff. Cosmetics Fl, Inc. v. City of Miami Beach,* 866 F.3d 129, 1298 (11th Cir. 2017). In a First Amendment case, the "irreparable injury" prong of the standard for preliminary injunctive relief is not contestable. The Deactivation Order harms USF SJP by chilling its speech and association, threating its funding and operations, harming its reputation, and making it a pariah on campus even in the eyes of the University itself. There is no adequate remedy at law for these harms.

### III.   The Remaining Factors Weigh in Favor of an Injunction.

Where a plaintiff seeks a preliminary injunction against the government, the third and fourth elements of the test for issuing relief—the balance of the equities and whether relief is in the public interest—merge. *See Florida v. Dep't of Health & Human Servs.*, 19 F.4th 1271, 1293 (11th Cir. 2021) (citation omitted); *Swain v. Junior*, 961 F.3d 1276, 1293. And "[w]here, as here, [an] injunction would require a government defendant to merely comply with federal law, both the balance of the hardships between the parties and the public interest weigh in favor of its issuance." *Alpha Phi Alpha Fraternity, Inc. v. Raffensperger*, 2023 WL 7037537, at *139 (N.D. Ga. Oct. 26, 2023).

It is, of course, "inherently against the public interest" to allow any public officials to violate the First Amendment. *Montana Med. Ass'n v. Knudsen*, 591 F. Supp.

14

3d 905, 917 (D. Mont. 2022). Defendants have "no legitimate interest in enforcing an unconstitutional" order. *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006). Any insult or inconvenience they might claim by being restrained from deactivating USF SJP is a "cost" that "'We the People' have accepted" as part of the First Amendment and the rule of law, which serve significant societal interests. *Speech First*, 32 F.4th at 1128.

In short, "[t]he public interest is served when constitutional rights are protected." *Democratic Exec. Comm. of Fla. v. Lee,* 915 F.3d 1312, 1327 (11th Cir. 2019). In particular, the public has in interest in freedom of speech and association and the "vigilant protection" of those freedoms "is nowhere more vital than in" our institutions of higher learning, *Shelton v. Tucker*, 364 U.S. at 487 (1960); *Speech First.*, 32 F.4th at 1128.

## CONCLUSION

For all the reasons stated above, this Court should enter a preliminary injunction restraining Defendants from deactivating USF SJP.

Dated: November 20, 2023

Respectfully submitted,

/s/ Roza Tawil
_____

| | |
|---|---|
| Roza Tawil (1038507) | Lena F. Masri* |
| roza@erchidlaw.com | lfmasri@cair.com |
| **ERCHID LAW FIRM** | Gadeir Abbas* |
| 203 N. Armenia Ave #101 | gabbas@cair.com |
| Tampa, Florida 33609 | Justin Sadowsky* |
| (813) 631-722 | jsadowsky@cair.com |
| | Hannah Mullen* |
| | hmullen@cair.com |
| | **COUNCIL ON AMERICAN-ISLAMIC RELATIONS LEGAL DEFENSE FUND (CAIR LDF)** |
| | 453 New Jersey Ave SE |
| | Washington, DC 20003 |
| | (202) 742-6420 |
| | |
| | Omar Saleh (91216) |
| | osaleh@cair.com |
| | **CAIR FLORIDA** |
| | 8076 N 56th St. |
| | Tampa, FL 33617 |
| | (833) 224-7352 |
| | |
| | Joshua Karsh* |
| | jkarsh@findjustice.com |
| | **MEHRI & SKALET, PLLC** |
| | 2000 K Street NW, Suite 325 |
| | Washington, DC 20006 |
| | (773) 505-7533 |
| | |
| | *Pro hac vice applications forthcoming* |

*Counsel for Plaintiff*

16

## CERTIFICATE OF COMPLAINCE

This document complies with the word limit of Local Rule 7.1(F) because, excluding the parts of the document exempted by the Rule, this document contains 4,010 words inclusive of headings, footnotes and quotations and exclusive of this Certificate. It complies with the formatting requirements of Local Rule 5.1(C) because it is double spaced, in 14-point font, with one-inch margins on all sides, and is page numbered. Pursuant to Rule 7.1(F) this certification was prepared in reliance on the word-count function of the word-processing system (Microsoft Word) used to prepare the document.

Date: November 22, 2023

/s/ Roza Tawil

Roza Tawil (1038507)
roza@erchidlaw.com
**ERCHID LAW FIRM**
203 N. Armenia Ave #101
Tampa, Florida 33609
(813) 631-722

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of November 2023, the foregoing document was electronically filed with the Clerk of Court via the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Roza Tawil*