UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

STUDENTS FOR JUSTICE IN
PALESTINE AT THE UNIVERSITY
OF SOUTH FLORIDA,

   *Plaintiff,*

v.                                 Case No. 1:23-cv-00281-MW-HTC

RONALD DESANTIS, in his official
capacity as Governor of Florida, et al,

   *Defendants.*

## GOVERNOR DESANTIS'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

On October 7, 2023, Hamas death squads invaded the sovereign State of Israel and brutally raped, tortured, and murdered more than 1,400 innocent Israeli civilians – including the elderly, woman, children, and babies – while taking at least two hundred more hostage.[1] These acts of ethnic cleansing and genocide against Jewish civilians have spurred a sharp rise in antisemitic attacks throughout the United States. This includes violent protests and demonstrations on college and university campuses by groups sympathetic to, and sometimes directly supportive of, the October 7th massacre and the terrorist group that perpetrated it.

---

[1] The Governor adopts all of the facts in the Board's Introduction to its Response in Opposition to Plaintiff's Motion for Preliminary Injunction (DE 36).

The National Students for Justice in Palestine ("National SJP") is one of those groups. Indeed, it disseminated two "Day of Resistance Toolkits" embracing Hamas' terrorist attacks and encouraging its college chapters to undertake disruptive and illegal actions on the University of Florida and University of South Florida campuses. In fact, the toolkits referenced Hamas' massacre as "the resistance" and unequivocally state that "Palestinian students in exile are PART of this movement, not in solidarity with this movement." Compl. (DE 1), Ex. 1.

Based on the national chapter's violent rhetoric and "support of terrorism," *Id.*, and the likelihood of further antisemitic attacks on Florida campuses by similar groups, Florida Board of Governors Chancellor Ray Rodrigues issued a memorandum ("Memorandum") encouraging the University of Florida and University of South Florida Boards of Trustees to deactivate their student chapters of the National SJP. The Memorandum, however, did not order either Board of Trustees to take that action. And neither has attempted to.

In response, the Students for Justice in Palestine chapter at the University of South Florida sued the Florida Board of Governors ("Board") and its Chancellor Ray Rodrigues, the members of the University of South Florida's Board of Trustees ("University"), and the Governor to enjoin them from enforcing the Memorandum. *Id.* Plaintiff alleges that both the Memorandum, and the threat of its enforcement, violate "its members['] protected First Amendment rights to associate, assemble, and speak," *Id.* ¶ 60, and "leav[e] the organization and its student members in limbo," *Id.* ¶ 52.

The Governor should be dismissed for three reasons. First, Plaintiff alleges that the Governor consulted with Chancellor Rodrigues on the Memorandum, and subsequently applauded and claimed credit for it. *E.g.*, *Id.* ¶¶ 3 & 45. But the Governor did not, and could not, issue the Memorandum. Thus, the Governor is not responsible for the allegedly unconstitutional conduct, which means Plaintiff does not satisfy the *Ex parte Young* exception to the Governor's sovereign immunity.

Second, Plaintiff alleges that the Memorandum and its enforcement – not the Governor's actions – violate its First Amendment rights. *E.g.*, *Id.* ¶¶ 52 and 60. Thus, Plaintiff cannot connect – or trace – the Governor's actions to its alleged injury. And because the Governor did not cause Plaintiff's alleged injury, a judgment against him would not redress it. For both reasons, Plaintiff does not have Article III standing as to the Governor.

Last, even if Plaintiff satisfied the *Ex parte Young* exception and had Article III standing, the Governor would be a redundant defendant because a judgment against the University would provide Plaintiff the relief it seeks.

For each of these reasons, the Governor is not a proper party to this case and the Court should dismiss him with prejudice.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires "factual content" that will support a "reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleading facts that are "merely consistent with a defendant's liability" is not enough because such pleadings "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" either. *Id.* And while courts must "assume the veracity of well-pleaded factual allegations," they must not credit allegations in the form of "labels and conclusions." *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022) (cleaned up).

## ARGUMENT

**I.    Sovereign Immunity Bars Plaintiff's Claims Against Governor DeSantis.**

"The Eleventh Amendment protects states from being subject to suit in federal court." *Freyre v. Chronister,* 910 F.3d 1371, 1380 (11th Cir. 2018). The Supreme Court in *Ex parte Young*, 209 U.S. 123, 167-68 (1908), however, created an exception for suits against state officials in their official capacities "seeking prospective equitable relief to end continuing violations of federal law." *Reprod. Health Servs. v. Strange*, 3 F.4th 1240, 1255 (11th Cir. 2021), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022) (cleaned up).

But there is an exception to the exception. Plaintiffs bringing suit under *Ex parte Young* typically challenge the constitutionality of state statutes. *See, e.g.*, *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011) (constitutional challenge to Georgia anti-nepotism statute); *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999)

(constitutional challenge to Alabama's Partial Birth Abortion Ban Act). In such cases, the *Ex parte Young* exception permits suits against only those state officials whose "office[s] imbue[] [the]m with the responsibility to enforce the law or laws at issue in the suit." *Grizzle*, 634 F.3d at 1319.

Here, Plaintiff challenges the constitutionality of the Memorandum. But, as with statutory challenges, plaintiffs may not contest state action simply by "choosing whichever state official appears most convenient and haling them into federal court under the aegis of 42 U.S.C. § 1983." *Support Working Animals, Inc. v. DeSantis*, 457 F. Supp. 3d 1193, 1208 (N.D. Fla. 2020) [*Support Working Animals* I]. Rather, they must show that the defendant state official, "by virtue of his office, ha[s] some connection with the unconstitutional act or conduct complained of." *Luckey v. Harris*, 860 F.2d 1012, 1015-16 (11th Cir. 1988) (quoting *Young*, 209 U.S. at 157). This connection must be more than figurative. Plaintiffs must establish that the defendant official is "responsible for the challenged action." *Luckey*, 860 F.2d at 1015. Here, that means plausibly alleging that the Governor is legally responsible for the Memorandum. The Complaint makes no such showing because the Governor has no such authority.

Article IX, section 7(b) of the Florida Constitution creates "a single state university system comprised of all public universities" and governed by "a board of governors." Section 7(d) provides that the Board will include seventeen members and "shall operate, regulate, control, and be fully responsible for the management of the whole university system." The provision also authorizes the Governor to appoint

5

fourteen of those members, subject to confirmation by the Florida Senate[2], and provides that the "[B]oard's management shall be subject to the powers of the legislature to appropriate for the expenditure of funds." *Id.* But nowhere does it empower the Governor to remove those members or direct their actions. *See* Art. IX, § 7, Fla. Const.; § 1001.70, Fla. Stat.; *see generally* § 1001.706, Fla. Stat. And Plaintiffs do not allege otherwise.

Instead, Plaintiff claims that the Governor is sufficiently connected to the Memorandum because Chancellor Rodrigues "act[ed] in consultation or at the direction of Defendant Governor Ronald DeSantis," Compl. ¶ 3, and the Governor claimed during a presidential primary debate that "[h]e deactivated [the Plaintiff's chapter]," Compl. ¶ 45.

Plaintiff's allegations that the Governor "directed" the Board to issue the Memorandum and "deactivated" Plaintiff's chapter are not plausible for two reasons. First, Plaintiff concedes that its chapter has not been deactivated. *See, e.g.*, Compl. ¶ 58 ("If it were deactivated, USF SJP would stand to lose . . . ."); Compl. ¶ 56 ("USF SJP has every reason to fear that deactivation could occur at any moment."); Compl. ¶ 47 ("Chancellor Rodrigues stated that the universities have not deactivated their university chapters of SJP.") (internal quotation omitted).

---

[2] Section 1001.70(1), Florida Statutes, codifies art IX, section 7's requirements that the Board shall include seventeen members, fourteen appointed by the Governor and subject to Senate confirmation, and enumerates their terms of office.

Second, as discussed *supra,* the Governor does not have the power to take either action. *Cf. Ashcroft*, 556 U.S. at 678 ("The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.") (internal quotation omitted); *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) ("A facially plausible claim must allege facts that are more than merely possible.") (citing *Ashcroft,* 556 U.S. at 678). Courts need not accept implausible and conclusory allegations. *See Ashcroft*, 556 U.S. at 678; *Chaparro*, 693 F.3d at 1337. Thus, claims resting on such allegations will not survive a motion to dismiss. *See Twombly*, 550 U.S. at 556; *Ashcroft*, 556 U.S. at 678.

Moreover, neither claiming responsibility for an action, nor possessing informal influence over actors with the responsibility, satisfy the *Ex parte Young* exception. Rather, the analysis turns on whether the relevant official was *formally* responsible for the challenged action. *See Luckey*, 860 F.2d at 1015-16. Were it otherwise, plaintiffs could drag officials with no relevant enforcement authority over a statute, or responsibility for a challenged action, into countless lawsuits simply by claiming that they support the challenged law or hold political sway over those who took the challenged action. *See Common Cause Fla. v. DeSantis*, No. 4:22-cv-109-AW-MAF, 2022 WL 19978293, at *3 (N.D. Fla. Nov. 8, 2022) ("The lower federal courts have consistently held or recognized that governors cannot be sued under *Ex Parte Young* just because they have . . . publicly endorse[d] and defend[ed] the challenged scheme."); *see also Disability Rts. S.C. v. McMaster*, 24 F.4th 893, 901 (4th Cir. 2022) (holding governor was not a proper

7

defendant in a challenge to a law that he "publicly advocated" for because he could not enforce the law himself).

Thus, because the Governor has neither the authority to issue – or direct the Board to issue – the Memorandum, nor the authority to "deactivate" student chapters, he does not "by virtue of his office, ha[ve] some connection with the unconstitutional act or conduct complained of." *Luckey*, 860 F.2d at 1015-16 (cleaned up). And neither claiming credit for, nor applauding, state action makes an official responsible for it. *See Common Cause Fla. v. DeSantis*, No. 4:22-cv-109-AW-MAF, 2022 WL 19978293, at *3. On those bases alone, the Governor is not a proper defendant. *See Namphy v. DeSantis*, 493 F. Supp. 3d 1130, 1137 (N.D. Fla. 2020) (dismissing Governor as improper defendant under *Ex parte Young* because his office "did not connect[ ] him with the duty of enforc[ing]" challenged voter registration extension); *Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1255 (N.D. Fla. 2016) (same).

## II.     Plaintiffs Do Not Have Standing As to Governor DeSantis.

The Governor joins the arguments in Section I of the Board's Motion to Dismiss (DE 61) and Section 1(a) of the Board's Response in Opposition to Plaintiff's Motion for Preliminary Injunction (DE 60) that Plaintiff has not alleged an injury in fact.[3] But even assuming that Plaintiff alleges an injury, it still does not have standing as to the

---

[3] The Governor also joins Section III of the Board's Motion to Dismiss (DE 61) and the remaining portion of the Board's Response in Opposition to Plaintiff's Motion for Preliminary Injunction (DE 60).

Governor because the Complaint neither traces Plaintiff's alleged injury to the Governor, nor plausibly alleges that an injunction issued against the Governor is likely to redress that injury.

Article III of the Constitution limits the subject-matter jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. "To have a case or controversy, a litigant must establish that he has standing, which requires proof of three elements." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (cleaned up). A plaintiff must establish "(1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Plaintiff, as the party invoking federal jurisdiction, "bears the burden of establishing these elements by alleging facts that 'plausibly' demonstrate each element." *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1337 (11th Cir. 2021).

    1. *Plaintiff's alleged injury is not traceable to the Governor.*

Whether a plaintiff meets the *Ex parte Young* exception and has Article III standing is largely the same inquiry. *People First of Alabama v. Merrill*, 467 F. Supp. 3d 1179, 1203 (N.D. Ala. 2020) ("The analysis for whether a state official has "some connection" to the challenged statute is similar to the analysis for whether a state official is a proper defendant for the purposes of traceability and redressability."); *see also Cressman v. Thompson*, 719 F.3d 1139, 1146 n.8 (10th Cir. 2013) ("[T]here is a common thread between Article III standing analysis and *Ex Parte Young* [sovereign immunity]

9

analysis."); *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004) ("Whether [state] officials are, in their official capacities, proper defendants in [a] suit is really the common denominator of [these] two separate inquiries.") Thus, Plaintiff does not have Article III standing against the Governor for the same reasons it does not satisfy the *Ex parte Young* exception – the Governor has no legal connection to, and is not responsible for, issuing the Memorandum or otherwise deactivating Plaintiff's chapter.

Courts within the Eleventh Circuit, however, have made clear that the *Ex parte Young* and Article III standing analyses are separate issues. *See, e.g.*, *Lewis v. Governor of Alabama*, 944 F.3d 1287, 1295 (11th Cir. 2019) (en banc); *Merrill*, 467 F. Supp. 3d at 1203 ("[A] state official could be a proper defendant under *Ex parte Young*, but not a proper defendant for the purposes of standing."). Thus, in an abundance of caution, the Governor will also demonstrate that Plaintiff lacks Article III standing. But given that Plaintiff cannot satisfy *Ex parte Young*'s more relaxed "some connection" standard, *see* Section I, *supra*, it certainly does not meet Article III's more stringent traceability requirement. *See Falls v. DeSantis*, No. 4:22-cv-166, 2022 WL 19333278, at *1 (N.D. Fla. July 8, 2022) (dismissing Governor from challenge to law he did not enforce for lack of standing while noting that "the *Ex parte Young* analysis is, if anything, more lenient than Article III's traceability requirement").

To show traceability, Plaintiff "must show a 'causal connection' between [its] injury and the challenged action of the [Governor] . . . , as opposed to the action of an

10

absent third party." *City of S. Miami v. Governor*, 65 F.4th 631, 640 (11th Cir. 2023) (quoting *Lewis*, 944 F.3d at 1296). In other words, Plaintiff must show that its "injuries are connected with" the Governor's conduct. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1125 (11th Cir. 2019) (cleaned up) (quoting *Trump v. Hawaii*, 585 U.S. ––––, 138 S. Ct. 2392, 2416 (2018)). Thus, "[w]hen traceability and redressability are at stake, the key questions are who caused the injury and how it can be remedied." *City of S. Miami*, 65 F.4th at 640–41 *see Jacobson*, 974 F.3d at 1253–54 (holding plaintiff had no standing where its alleged injury was not caused by the defendant and the effect of the court's judgment on the defendant would not redress the injury).

Plaintiff alleges that the Memorandum "unconstitutionally denies [its'] and its members['] protected First Amendment rights to associate, assemble, and speak." Compl. ¶ 60. In addition, Plaintiff claims that "[t]he uncertainty surrounding Defendants' plans for USF SJP leaves the organization and its student members in limbo." Compl. ¶ 52. And it notes that the Governor issued statements supporting, and claiming responsibility for, the Memorandum. Compl. ¶ 45.

But nowhere does it allege that the Governor's actions caused that harm. Rather, it blames the Memorandum and the specter of its enforcement by the University. Compl. ¶ 61 ("The *Deactivation Order* unconstitutionally singles out and punishes USF SJP on the basis of an association, or imputed association, with National SJP.") (emphasis added); Compl. ¶ 56 (claiming [Plaintiff] has every reason to fear that

deactivation could occur at any moment" because "[University [a]dministrators have not formally withdrawn the possibility of deactivation").

The Eleventh Circuit has made clear that plaintiffs cannot establish traceability as to defendants whose actions did not contribute to their alleged harm. *See Jacobson*, 974 F.3d at 1253–54 ("Because the [Secretary of State] didn't do (or fail to do) anything that contributed to [their] harm," the voters and organizations "cannot meet Article III's traceability requirement [as to the Secretary]"); *Lewis*, 944 F.3d at 1301 (same). Plaintiff's claim that the Governor "promulgated" the Memorandum does not change that – conclusory and implausible allegations "do not suffice" to show standing. *See Tsao*, 986 F.3d at 1338 (holding that "mere conclusory statements" do not meet plaintiffs' burden to demonstrate each standing element) (quoting *Ashcroft*, 556 U.S. at 678); *Warren Tech., Inc. v. UL LLC*, No. 1:18-cv-21019-UU, 2018 WL 10550930, at *4 (S.D. Fla. Oct. 31, 2018), *aff'd*, 962 F.3d 1324 (11th Cir. 2020) (holding plaintiff "failed to demonstrate that any injury was fairly traceable to [d]efendants' conduct because the only allegation connecting [d]efendants' misrepresentations and [plaintiff]'s lost sales was a conclusory statement . . ."). And the Board's actions cannot be imputed to the Governor for purposes of establishing traceability because the Governor cannot direct the Board's actions. *See Jacobson*, 974 F.3d at 1253–54 ("Because the Supervisors are independent officials not subject to the Secretary's control, their actions to implement the ballot statute may not be imputed to the Secretary for purposes of establishing traceability.")

Last, just as the Governor's statements applauding the Memorandum and claiming credit for it do not meet the *Ex parte Young* exception, they do not trace Plaintiff's alleged injuries to him. *See Support Working Animals v. Governor of Fla.*, 8 F.4th 1198, 1204 (11th Cir. 2021) (holding that the Attorney General's support for the challenged statute and her role "in crafting [the] duly enacted legislation" did not "satisfy the traceability requirement") [*Support Working Animals* II]; *Jacobson*, 974 F.3d at 1253–54 (rejecting argument that the Secretary of State's role in prescribing rules and issuing directives about ballot orders had any bearing on whether the Secretary could enforce the challenged provision governing ballot order because "[i]f rulemaking authority were sufficient to establish traceability, plaintiffs could presumably also challenge a law by suing the legislators who enacted it instead of the officials who execute it").

  2. <u>*Plaintiff's requested injunction is not likely to redress its alleged injury.*</u>

"Traceability and redressability[ ]often travel together." *Support Working Animals* II, 8 F.4th at 1201. Indeed, the elements "overlap as two sides of a causation coin." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1159 (10th Cir. 2005); *see also Dynalantic Corp. v. Dep't of Defense*, 115 F.3d 1012, 1017 (D.C. Cir. 1997) (treating elements as "two sides of [the] causation coin").

Redressability "focuses . . . on whether the injury that a plaintiff alleges is likely to be redressed through the litigation." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 287, 128 S.Ct. 2531 (2008) (emphasis removed). Plaintiff's redress need not

13

be total. *Moody v. Holman*, 887 F.3d 1281, 1287 (11th Cir. 2018). But it "must show that it is likely, not merely speculative, that a favorable judgment will redress [its] injury." *Lewis*, 944 F.3d at 1296 (citing *Lujan*, 504 U.S. at 561). Plaintiff does not – and cannot – make that showing here for at least three reasons.

*First*, Plaintiff alleges that both the Memorandum and the fear of its enforcement violate "its members['] protected First Amendment rights to associate, assemble, and speak." Compl. ¶ 60. Fixing that problem would require rescinding the Memorandum or precluding the Board and University from enforcing it. The Governor can do neither. *See* Art. IX, § 7, Fla. Const.; §§ 1001.70 and 1001.706, Fla. Stat. Thus, a favorable judgment against the Governor is not likely to redress Plaintiff's injury. *See Support Working Animals* II, 8 F.4th at 1205 ("A judgment against the Attorney General prohibiting her from enforcing §32 wouldn't significantly increase the likelihood of redressing the plaintiffs' injuries because [ ] the Attorney General has no enforcement authority."). Put another way, "because the [Governor] [has] not cause[d] any injury [Plaintiff] might suffer, relief against h[im] will not redress that injury." *Jacobson*, 974 F.3d at 1254 ("An injunction ordering the Secretary not to follow the ballot statute's instructions for ordering candidates cannot provide redress, for neither she nor her agents control the order in which candidates appear on the ballot.")

*Second*, plaintiffs cannot show redressability as to a defendant that cannot implement the relief they seek. *See, e.g.*, *Lujan*, 504 U.S. at 571 (holding plaintiffs did not establish redressability against Defendant Secretary of the Interior because the Secretary

14

could not implement requested remedy). Plaintiff asks the Court to "enjoi[n] Defendants from deactivating [Plaintiff's chapter]." Compl., p. 16, Prayer for Relief. As discussed, the Governor has no power to direct the Board or University's actions. Thus, Plaintiff cannot show that a judgment against the Governor is likely to redress its injuries. *See Denton v. Bd. of Governors*, No. 4:22-cv-341-RH-MAF, DE 65, at *4 (N.D. Fla. June 12, 2023) (concluding plaintiffs did not have standing against the Governor, despite his power to appoint members of the Board of Governors, because "he has no direct authority to take remedial action of the kind the plaintiffs seek"); *Israel v. DeSantis*, No. 4:19-cv-576-MW-MAF, 2020 WL 2129450, at *4 (N.D. Fla. May 5, 2020) (dismissing the Governor because "there is no remedy this Court could order as to Defendant DeSantis").

*Last*, the Eleventh Circuit "ha[s] held traceability to be lacking if the plaintiff would have been injured in precisely the same way without the defendant's alleged misconduct." *City of S. Miami*, 65 F.4th at 645 (quoting *Walters v. Fast AC, LLC*, 60 F.4th 642, 650 (11th Cir. 2023)). Put differently, "a plaintiff lacks standing to sue over a defendant's action if an independent source would have caused him to suffer the same injury." *City of S. Miami*, 65 F.4th at 645 (quoting *Walters*, 60 F.4th at 650-51). That is the case here. The Governor did (and does) not have the enforcement power to issue the Memorandum, but the Board did[4], and Plaintiff does not allege that the Board

---

[4] This authority has been delegated more pointedly to the State Universities through Florida Board of Governors Regulation 1.001.

issued it because the Governor instructed it to. Thus, the Board would have issued the Memorandum, and Plaintiff would have been "chilled" by it, whether or not the Governor took the actions he did. In other words, Plaintiff "would have been injured in precisely the same way without the [Governor]'s alleged misconduct." *City of S. Miami*, 65 F.4th at 645.

Because Plaintiff does not connect the Governor's actions to its alleged injury, and a judgment against the Governor would not redress its injury, Plaintiff does not have standing and its claims against the Governor must be dismissed. *See, e.g.*, *Falls*, No. 4:22-cv-166, 2022 WL 19333278, at *5 (dismissing claims against the Governor because the alleged injury was traceable only to another defendant); *W. Flagler Assocs. Ltd. v. DeSantis*, 568 F. Supp. 3d 1277, 1277 (N.D. Fla. 2021) (dismissing action for lack of standing because plaintiffs "have not shown traceability as to the Governor"); *Israel*, No. 4:19-cv-576-MW/MAF, 2020 WL 2129450, at *4 (holding plaintiff did not show traceability because the Governor could not provide Plaintiff's requested remedy).

### III. Governor DeSantis Is A Redundant Defendant.

Last, even if Plaintiff met the *Ex parte Young* exception or had standing to sue the Governor, he should still be dismissed as a redundant defendant.

Courts consider a state official redundant to a lawsuit where an order directed to another (typically more appropriate) official "would be sufficient to provide complete relief." *Honeyfund.com, Inc. v. DeSantis*, 622 F. Supp. 3d 1159, 1174 (N.D. Fla. 2022). Both this Court and the Eleventh Circuit routinely dismiss claims against redundant officials.

16

*Brenner v. Scott*, 999 F. Supp. 2d 1278, 1286 (N.D. Fla. 2014) ("The Eleventh Circuit has held that a district court may dismiss claims against redundant official-capacity defendants."); *see, e.g., Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (approving the dismissal of official-capacity defendants whose presence was redundant to the naming of an institutional defendant); *Honeyfund.com*, 622 F. Supp. 3d at 1174 (holding plaintiffs did not have standing to sue Governor but, even if they did, Governor was redundant defendant because requested order directed to Florida Commission on Human Rights "would be sufficient to provide complete relief"); *Brenner*, 999 F. Supp. 2d at 1286 (dismissing Florida Governor and Attorney General as redundant because an order directed to the Department of Health would provide complete relief).

The Governor is redundant here because an order enjoining the University from enforcing the Memorandum would provide Plaintiff the complete relief it seeks. *See* Compl., p. 16, Prayer for Relief (requesting this Court to "enjoi[n] Defendants from deactivating [Plaintiff's chapter]." Accordingly, the Court should dismiss the Governor. *See Honeyfund.com*, 622 F. Supp. 3d at 1174; *Brenner*, 999 F. Supp. 2d at 1286. And dismissal should be with prejudice. *See, e.g., Rowe v. City of Fort Lauderdale*, 8 F. Supp. 2d 1369, 1375 n.7 (S.D. Fla. 1998) (dismissing with prejudice action against agency employee in her official capacity as redundant); *Garrett v. Clarke Cty. Bd. of Educ.*, 857 F. Supp. 949, 952 (S.D. Ala. 1994) (same); *Kubany by Kubany v. Sch. Bd. of Pinellas Cty.*, 818 F. Supp. 1504, 1507 (M.D. Fla. 1993) (same).

Dated: December 22, 2023,   Respectfully submitted,

**RON DESANTIS**
*Governor*

/s/ *Nicholas J.P. Meros*
NICHOLAS J.P. MEROS (Fla. Bar #120270)
*Deputy General Counsel*
SAMUEL F. ELLIOTT (Fla. Bar #1039898)
*Assistant General Counsel*

**EXECUTIVE OFFICE OF THE GOVERNOR**
The Capitol, PL-5
400 S. Monroe Street
Tallahassee, FL 32399
Phone: (850) 717-9310
Facsimile: (850) 488-9810
Nicholas.Meros@eog.myflorida.com
Samuel.Elliott@eog.myflorida.com

*Counsel for Governor Ron DeSantis*

## REQUEST FOR ORAL ARGUMENT

Pursuant to N.D. Fla. Local Rule 7.1(K), the Governor requests oral argument on this Motion during the January 26, 2024, hearing on Plaintiff's Motion for Preliminary Injunction. The Governor estimates argument will take thirty (30) minutes per side.

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)**

Pursuant to N.D. Fla. Local Rule 7.1(F), I hereby certify that this Motion complies with the Rule's font requirements and contains 4,317 words, exclusive of the case style, signature block, and any certificate of service.

/s/ *Nicholas J.P. Meros*
Deputy General Counsel

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the Court's CM/ECF system, which provides notice to all parties, on December 22, 2023.

/s/ *Nicholas J.P. Meros*
Deputy General Counsel