UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

| | |
|---|---|
| STUDENTS FOR JUSTICE IN PALESTINE AT THE UNIVERSITY OF SOUTH FLORIDA,<br><br>               Plaintiff,<br><br>v.<br><br>Raymond Rodrigues, et al.<br><br>               Defendants. | Case No. 1:23-cv-281-MW-HTC |

**PLAINTIFF USF SJP'S COMBINED
REPLY BRIEF IN SUPPORT OF A PRELIMINARY INJUNCTION &
<u>OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS</u>**

## Table of Contents

Introduction ...................................................................................................1

Argument .......................................................................................................4

  I.  USF SJP has standing. ..................................................................4

    A.  USF SJP has concrete and particularized injuries-in-fact...............5

    B.  USF SJP's injury is traceable to these Defendants—and
       redressable by an injunction against them........................................8

      1.  Chancellor Rodrigues is a proper defendant: USF SJP'S
         injuries are traceable to him, and an injunction against him
         will provide meaningful relief......................................................8

      2.  The members of the Board of Governors are also proper
         defendants; USF SJP'S injuries are traceable to them, and an
         injunction against them will provide meaningful relief...........9

        a.  The Chancellor and the Board of Governors' role is not
           usurped, and cannot be usurped, by USF's trustees...........11

        b.  The Deactivation Order puts USF SJP under a credible
           imminent threat of deactivation............................................12

        c.  The Deactivation Order has legal effect—and even if it
           didn't, it has caused real injuries- in-fact, which an
           injunction, directed to the Chancellor and the Board of
           Governors, will redress..........................................................14

        d.  The Order's chilling effect is very far from speculative. ....15

      3.  Governor DeSantis is a proper defendant: USF SJP'S injuries
         are traceable to him, and an injunction against him will
         provide meaningful relief............................................................17

        a.  The Deactivation Order is traceable to Governor
           DeSantis....................................................................................18

b. The harms caused by the Order are redressable by Governor DeSantis: in the same way he used his power and authority to instigate the Deactivation Order, he can also use them to rescind it—or make that happen ..............21

4. The members of USF's Board of Trustees are also proper defendants......................................................................24

II.   All the Defendants are subject to suit under *Ex Parte Young*............256

III.  This case is ripe for adjudication.............................................................26

IV.   USF SJP has a substantial likelihood of success on the merits, satisfying the first requirement for preliminary injunctive relief. .....28

A. The Deactivation Order impermissibly punishes USF SJP based—at most—on a mere association with National SJP, running headlong into *HLP v. Holder*.................................................28

B. The Deactivation Order is also both viewpoint discriminatory, and not justified by any of Defendants' impermissibly newly concocted concerns about "disruption." .........................................32

V.    The presence of irreparable injury, the balance of the equities, and the public interest all favor preliminary injunctive relief. ................366

VI.   Defendants' gripe about a "shotgun" pleading is meritless............377

Conclusion..........................................................................................................399

Certificate of Compliance ...................................................................................41

**TABLE OF AUTHORITIES**

**Cases**                                                             **Page(s)**

*303 Creative LLC v. Elenis*,
  6 F.4th 1160 (10th Cir. 2021), *rev'd on other grounds,* 143 S. Ct.
  2298 (2023) ..................................................................................................18

*Austin v. Univ. of Fla. Bd. of Trs.*,
  No. 1:21cv184-MW/GRJ, 2022 U.S. Dist. LEXIS 241141, 2022
  WL 19375060 (N.D. Fla. Jan. 3, 2022)..............................................................18

*Austin v. Univ. of Fla. Bd. of Trustees*,
  580 F. Supp. 3d 1137 (N.D. Fla. 2022), *judgment vacated in
  part, appeal dismissed*, No. 22-10448-GG, 2023 U.S. App. LEXIS
  21860, 2023 WL 5051221 (11th Cir. Mar. 20, 2023) ......................................36

*Bartol v. Barrowclough*,
  251 F. Supp. 3d 855 (E.D. Pa. 2017)..................................................................37

*Bennett v. Spear*,
  520 U.S. 154 (1997)............................................................................................22

*Cate v. Oldham*,
  707 F.2d 1176 (11th Cir. 1983)..........................................................................35

*Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez*,
  561 U.S. 661 (2010)............................................................................................37

*Citizens For Responsible Gov't State PAC v. Davidson*,
  236 F.3d 1174 (10th Cir. 2000)..........................................................................26

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)............................................................................................12

*Dombrowski v. Pfister*,
  380 U.S. 479 (1965)............................................................................................14

*Dream Defenders v. Governor of Fla.*,
    57 F.4th 879 (11th Cir. 2023)........................................................................6, 12

*Elrod v. Burns*,
    427 U.S. 347 (1976)........................................................................4, 35

*Ex Parte Young*,
    209 U.S. 123 (1908) ........................................................................3, 26

*First Nat'l Bank of Boston v. Bellotti*,
    435 U.S. 765 (1978)........................................................................36

*Green Party of Tenn. v. Hargett*,
    791 F.3d 684 (6th Cir. 2015)........................................................................14

*Healy v. James*,
    408 U.S. 169 (1972)........................................................................3, 5, 28, 31

*Honeyfund.com, Inc. v. DeSantis*,
    622 F. Supp.3d 1159 (N.D. Fla. 2022)........................................................................36

*Humanitarian Law Project v. Holder*,
    561 U.S. 1 (2010)........................................................................3, 28, 30

*Jackson v. City of Centreville*,
    899 F. Supp. 2d 1209 (N.D. Ala. 2012)........................................................................37, 38

*Joseph v. Chronister*,
    No. 20-11073, 2021 U.S. App. LEXIS 30370, 2021 WL 4739608
    (11th Cir. Oct. 12, 2021) ........................................................................21

*Kennedy v. Bremerton Sch. Dist.*,
    142 S. Ct. 2407 (2022)........................................................................3, 31

*KH Outdoor, LLC v. City of Trussville*,
    458 F.3d 1261 (11th Cir. 2006)........................................................................36

*Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*,
    51 F.3d 982 (11th Cir. 1995)........................................................................24

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992).......................................................................4

*Meese v. Keene,*
    481 U.S. 465 (1987).......................................................................7

*New Hampshire v. Maine,*
    532 U.S. 742 (2001).......................................................................8

*Pernell v. Fla. Bd. Of Governors of the State Univ. Sys.,*
    641 F. Supp.3d 1218 (N.D. Fla. 2022)...............................12, 22, 25

*Reeves v. Jewel Food Stores, Inc.,*
    759 F.3d 698 (7th Cir. 2014).......................................................37

*Russell v. Lundergan-Grimes,*
    784 F.3d 1037 (6th Cir. 2015).....................................................26

*Speech First, Inc. v. Cartwright,*
    32 F.4th 1110 (11th Cir. 2022)...............................................*passim*

*Speech First, Inc. v. Fenves,*
    979 F.3d 319 (5th Cir. 2020).........................................................6

*United States v. Stevens,*
    559 U.S. 460 (2010).....................................................................27

*United States* v. *Virginia,*
    518 U. S. 515 (1996)....................................................................31

*Wilding v. DNC Serv. Corp.,*
    941 F.3d 1116 (11th Cir. 2019)...................................................25

*Wollschlaeger v. Governor of Florida,*
    848 F.3d 1293 (11th Cir. 2017) (en banc) ........................12, 26, 27

**Constitutions, Statutes, Rules, and Legislative Resolutions**

Fla. Const. Art. IX § 7...............................................................10, 21

Fla. Stat. § 20.155.........................................................................9

Fla. Stat. § 775.33.........................................................................................7, 29, 30

Fla. Stat. § 1001.70.................................................................................................21

Fla. Stat. § 1001.706.........................................................................................21, 22

Fla. Stat. § 1008.32.................................................................................................10

U.S. Const., Amend. 1.......................................................................................*passim*

Florida House Bill 465 (2024)
    https://www.flsenate.gov/Session/Bill/2024/465; ................................17

Florida Senate Bill 470 (2024)
    https://www.flsenate.gov/Session/Bill/2024/470 ................................17

H. Res. 883 (2023-2024)
    https://www.congress.gov/bill/118th-congress/house-
    resolution/883/text?s=1&r=82 .......................................................................16

**Secondary Sources**

American Association of University Professors (AAUP),
    *Political Interference and Academic Freedom in Florida's Public Higher
    Education Program (Dec. 2023),*
    https://www.aaup.org/file/AAUP_Special_Committee_Report_on_Flo
    rida_final.pdf
    [https://perma.cc/QNB8-2JBY ] .................................................................23

Amicus Brief of Jewish Studies Scholars,
    *AWAD v. Fordham Univ.*, 2020 NY App. Div. Briefs LEXIS 1993 (Oct. 2,
    2020) ............................................................................................................2

AP News (Jan. 11, 2024),
    *Israel's military campaign in Gaza seen as among the most destructive in
    recent history, experts say,*
    https://apnews.com/article/israel-gaza-bombs-destruction-death-toll-
    scope-419488c511f83c85baea22458472a796.................................................33

@ElbazStarinsky, Twitter (Nov. 16, 2023 5:38PM),
    https://twitter.com/ElbazStarinsky/status/17252973720480
    27774?s=20..........................................................................................34

Randy Fine,
    *Donald Trump has never let us down*, The Washington Times (Oct. 23,
    2023),
    https://www.washingtontimes.com/news/2023/oct/23/donald-
    trump-has-never-let-us-down/ .....................................................................18

Richard Hofstadter,
    *The Paranoid Style in American Politics*, in *The Paranoid Styled
    In American Politics and Other Essays* (1965).....................................................1

The Guardian (Nov. 1, 2023),
    *'The Palestine Exception': Why Pro-Palestinian Voices Are Suppressed in the
    US*,
    https://www.theguardian.com/world/2023/nov/01/palestine-us-
    activism-firings-speech
    [https://perma.cc/NL2H-S5UW] ...........................................................2, 16

The Guardian (Oct. 21, 2023),
    *Pro-Palestinian Views Face Suppression in US Amid Israel-Hamas War*,
    https://www.theguardian.com/us-news/2023/oct/21/israel-hamas-
    conflict-palestinian-voices-censored
    [https://perma.cc/59C8-E5HP] ............................................................2, 16

Jewish Voice for Peace,
    *Stifling Dissent*,
    https://www.jewishvoiceforpeace.org/wp-
    content/uploads/2015/09/JVP_Stifling_Dissent_Full_Report_Key_9074
    5869.pdf
    [https://perma.cc/2EMH-U3KJ] ..................................................................2

Rashid Khalidi,
    *It's Time to Confront Israel's Version of "From the River to the Sea,"*
    https://www.thenation.com/article/world/its-time-to-confront-
    israels-version-of-from-the-river-to-the-sea/ ............................................16

Anthony Lewis,
  *Freedom For The Thought That We Hate: A Biography of the First Amendment*
  (Basic Books 2007) ............................................................................1

@MeetthePress, Twitter (Oct. 29, 2023, 11:39 AM,
  https://twitter.com/MeetThePress/status/1718668861011112300 ........19

National Review (Nov. 15, 2023),
  *Florida Walks Back Ban,*
  https://www.nationalreview.com/news/florida-walks-back-ban-on-
  students-for-justice-in-palestine-amid-constitutional-concerns/
  [https://perma.cc/3JEZ-LGZE]. ...................................................9

New York Times (Dec. 17, 2023),
  *Campus Crackdowns Have Chilling Effect on Pro-Palestinian Speech,*
  https://www.nytimes.com/2023/12/17/us/campus-crackdowns-
  have-chilling-effect-on-pro-palestinian-speech.html ................................16

Palestine Legal and Center for Constitutional Rights,
  *The Palestine Exception to Free Speech: A Movement Under Attack in the
  U.S.,*
  https://ccrjustice.org/sites/default/files/attach/2015/09/Palestine%2
  0Exception%20Report%20Final.pdf
  [https://perma.cc/93RM-MF4U] .................................................. 2

Bernie Steinberg,
  *For the Safety of Jews and Palestinians, Stop Weaponizing Antisemitism,*
  Harvard Crimson (Dec. 29, 2023),
  https://www.thecrimson.com/article/2023/12/29/steinberg-
  weaponizing-antisemitism/ [https://perma.cc/7MA7-2CPY]. ................2

Republican Presidential Primary Debate (Nov. 15, 2023),
  https://www.rev.com/transcript-
  editor/shared/grQgT4NW1cphoyW5zuSh-
  aeXSCh5jD685St7s6Qz2zSADXzwF0XpKCGzzqMVG1TGyiZuzeTI4nM
  dtd5iLz54n-4B1Yc?loadFrom=PastedDeeplink&ts=1660.95
  [https://perma.cc/JC95-U6PG] ...................................................19

@VoteRandyFine, Twitter (Oct. 24, 2023, 2:56 PM),
    https://twitter.com/VoteRandyFine/status/1716906577909645714
    [https://perma.cc/8X83-3G92] ...................................................................19

Washington Post (Dec. 1, 2023),
    *Pain and an uncertain future for Palestinian students shot in Vermont*,
    https://www.washingtonpost.com/nation/2023/12/01/palestinian-
    students-shot-burlington-vermont/ ...........................................................16

Charles A. Wright & Arthur R. Miller,
    *Federal Practice & Procedure* § 1376 ................................................................37

## Introduction

Periodically, American politics is seized by panic and a "paranoid style"—exaggeration, suspicion, and conspiratorial fantasy.[1] During these periods, First Amendment protected speech is often among the first casualties. Disfavored voices are deemed threatening and then "humiliated and punished" for their words and beliefs.[2] This impulse dates back to Sedition Act of 1798. It re-emerged, notoriously, during the Know Nothing Movement in the 1850's, the first "Red Scare" and the Palmer raids after World War I, and then again during the "second Red Scare" in the 1950s associated with Senator McCarthy and the House Un-American Activities Committee.

Today, a variant of this paranoid style is manifesting in attempts to censor Palestinian voices and invent a "Palestinian Exception" to the First

---

[1] Richard Hofstadter, *The Paranoid Style in American Politics*, in *The Paranoid Styled In American Politics and Other Essays* (1965).

[2] Anthony Lewis, *Freedom For The Thought That We Hate: A Biography of the First Amendment* (Basic Books 2007).

Amendment.[3] Defendants and others are trying to chill or silence voices

advocating for Palestinian human rights—often by maligning them as

"terrorists" and categorically branding their advocacy as antisemitic "hate

speech."[4] This is the context in which Governor DeSantis has targeted

chapters of Students for Justice in Palestine —in defiance, as this brief will

show, of settled First Amendment law.

---

[3] *See* Palestine Legal and Center for Constitutional Rights, *The Palestine Exception to Free Speech: A Movement Under Attack in the U.S.*, https://ccrjustice.org/sites/default/files/attach/2015/09/Palestine%20Exception%20Report%20Final.pdf [https://perma.cc/93RM-MF4U]. *See also* The Guardian (Nov. 1, 2023), *'The Palestine Exception': Why Pro-Palestinian Voices Are Suppressed in the US*, www.theguardian.com/world/2023/nov/01/palestine-us-activism-firings-speech [https://perma.cc/NL2H-S5UW]; The Guardian (Oct. 21, 2023), *Pro-Palestinian Views Face Suppression in US Amid Israel-Hamas War,* www.theguardian.com/us-news/2023/oct/21/israel-hamas-conflict-palestinian-voices-censored [https://perma.cc/59C8-E5HP].

[4] Amicus Brief of Jewish Studies Scholars in *AWAD v. Fordham University*, 2020 NY App. Div. Briefs LEXIS 1993 (Oct. 2, 2020); Jewish Voice for Peace, *Stifling Dissent*, https://www.jewishvoiceforpeace.org/wp-content/uploads/2015/09/JVP_Stifling_Dissent_Full_Report_Key_90745869.pdf [https://perma.cc/2EMH-U3KJ; Bernie Steinberg, *For the Safety of Jews and Palestinians, Stop Weaponizing Antisemitism*, Harvard Crimson (Dec. 29, 2023), https://www.thecrimson.com/article/2023/12/29/steinberg-weaponizing-antisemitism/ [https://perma.cc/7MA7-2CPY].

The first three Parts of this brief address threshold issues of justiciability. Part I establishes Plaintiff's (USF SJP's) Article III standing. Part II dispatches Defendants' attempt to ignore *Ex Parte Young.* Part III then dispatches their suggestion that this dispute is not "ripe": because deactivation has been ordered in mandatory terms, in an order starting that "the student chapters must be deactivated"; because that order has never been rescinded; because USF SJP's speech has been chilled; and because USF SJP's reputation has been injured, this case is justiciable right now.

Part IV addresses the merits, showing USF SJP's likelihood of success on its First Amendment claim. The Deactivation Order runs headlong into both *Healy v. James*, 408 U.S. 169 (1972) and *Humanitarian Law Project v. Holder*, 561 U.S. 1 (2010). It cannot be sustained under either case. And Defendants also cannot save the Deactivation Order by abandoning or backing away from what it says (that USF SJP must be deactivated "Based on National SJP's support of terrorism"). Defendants cannot shift to different purported justifications now (such as "preventing interference with the educational environment in the form of disruption"). *See* Prelim. Inj. Opp. (ECF 60) at 5. The Deactivation Order says what it says and can't be salvaged by an after-the-fact edit. Justifications for interfering with First

Amendment rights cannot be "hypothesized or invented post hoc."

*Kennedy v. Bremerton Sch. Dist.,* 142 S. Ct. 2407, 2432 n.8 (2022).

Part V addresses the three remaining requirements for preliminary injunctive relief: (1) irreparable injury—which is present here because "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns,* 427 U.S. 347, 373 (1976); (2) the balance of equities, and (3) the public interest. Equities and the public interest are always served by requiring compliance with the Constitution, and government never has an interest in enforcing an unconstitutional order.

Part VI dispatches Defendants' suggestion that USF SJP should have pleaded three First Amendment claims instead of one: "freedom to associate," "freedom of speech and viewpoint discrimination," and "freedom of assembly." *See* Bd. of Governors' MTD (ECF 61) at 3-4.

## Argument

### I.     USF SJP has standing.

The Supreme Court has developed a three-part test for Article III standing, requiring: (a) "injury-in-fact," (b) causation ("traceability"), and (c) remedial benefit ("redressability"). *Lujan v. Defs. of Wildlife*, 504 U.S. 555,

560-61 (1992); *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1119 (11th Cir. 2022). The evidence here satisfies all three tests. USF SJP has standing.

### A.  USF SJP has concrete and particularized injuries-in-fact.

USF SJP has at least three concrete and particularized injuries-in-fact.

*First*, the Deactivation Order *mandates* that all student chapters of Students for Justice in Palestine operating in the State University System "*must*" be deactivated, creating a credible threat of deactivation, which would be both a burden on the right of association and a prior restraint. *Healy*, 408 U.S. at 181. The Order places a heavy burden of justification *on Defendants*, which they have not met. *Id.* at 184 (noting that once a student organization files for registration or registers, "the burden [is] upon the College administration to justify" disbanding or deactivating it). And on this point, it is no answer that the Order proposes that SJP chapters "may form another organization." Deactivation Order (Exhibit A). The First Amendment leaves no room for the view that a student group cannot call itself what it wants; that its members cannot associate using that chosen name where it is neither obscene nor already taken; or that the state can refuse to recognize the group and force it to change its name simply

because university administrators may find the views of an affiliated group (*National* SJP) abhorrent. *Healy*, 408 U.S. 169.

*Second*, the Deactivation Order remains in place today. Although not yet enforced, it has never been rescinded. It not only places USF SJP under imminent threat. In addition, it is hilling speech and association, causing USF SJP to self-censor, and that chill and self-censorship are also Article III injuries. *See Dream Defenders v. Governor of Fla.*, 57 F.4th 879, 887 (11th Cir. 2023) (when plaintiffs have self-censored and canceled plans to hold events, that is Article III injury).[5] On this issue of First Amendment chill as injury-in-fact, the Eleventh Circuit has said that the "fundamental question" is whether "the average college-aged student would be intimidated." *Speech First*, 32 F.4th at 1120, 1124. That question isn't hard to answer here: *Yes, you bet.* In the face of a Deactivation Order explicitly singling out one campus group (USF SJP), specifically targeting it and alluding to the criminal law — while targeting no other group on campus —

_____

[5] The chill here is made worse — the threat of deactivation is even more feared — because USF SJP knows that SJP chapters have already been deactivated on four other campuses: Columbia, Brandeis, Rutgers, and George Washington.

*any* campus student organization thus targeted reasonably "could fear that [its] speech would get [it] crossways with the University, and that [it]'d be better off just keeping [its] mouth shut." *Speech First,* 32 F.4th at 1122.[6]

*Third,* the Order's in terrorem reference to the criminal law, Fla. Stat. § 775.33—plants a suggestion or implication that USF SJP could be accused of or charged with a felony. That has damaged the organization's reputation. And that, too, is Article III injury. *Meese v. Keene,* 481 U.S. 465, 473-74 (1987) (noting that injury to reputation establishes sufficient injury-in-fact for Article III purposes). For reputational reasons, among others, "[n]o reasonable college student wants to run the risk of being accused of 'offensive,' 'hostile,' 'negative,' or 'harmful' conduct—let alone 'hate or bias'" or criminal conduct. *Speech First*, 32 F.4th at 1124.

Separately and in combination, these three forms of harm are more than enough to satisfy the injury-in-fact required for Article III standing.

---

[6] *See* also *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020) ("[W]hen dealing with pre-enforcement challenges to recently enacted (or, at least, non-moribund) statutes that facially restrict expressive activity … courts will *assume* a credible threat of prosecution in the absence of compelling contrary evidence.") (emphasis added) (citing cases).

7

### B. USF SJP's injury is traceable to these Defendants—and redressable by an injunction against them.

USF SJP's complaint names three sets of defendants—in their official capacities: (1) Governor DeSantis, (2) Chancellor Rodrigues and members of the state university system's Board of Governors, and (3) USF's President and the members of USF's Board of Trustees. All are appropriate defendants here.  USF SJP's injuries are "traceable" to them. USF SJP's injuries will be "redressable" by injunctive relief entered against them. And neither traceability nor redressability nor anything else in Article III requires a plaintiff "to limit a suit to" only the "most" culpable defendants. *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1175 (10th Cir. 2021), *rev'd on other grounds,* 143 S. Ct. 2298 (2023).

### 1. Chancellor Rodrigues is a proper defendant: USF SJP'S injuries are traceable to him, and an injunction against him will provide meaningful relief.

The Deactivation Order is directly traceable to Chancellor Rodrigues. He issued it over his signature. He distributed it to the state university presidents. Exhibit A. Exercising the same powers and authority he used to promulgate it, he can also rescind it. And because he has not rescinded, it remains in place, continuing to threaten deactivation, chill USF SJP's

speech, and damage USF SJP's reputation. These harms will be redressable by an injunction enjoining Chancellor Rodrigues from enforcing the Order and requiring him to rescind it. And he is not a "redundant" defendant. ECF 61 at 2. *First*, unless the Board of Governors will stipulate that the Chancellor's actions will be deemed its own for purposes of liability and relief, there remains a distinction between them. *See generally New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (discussing "protecting the integrity of the judicial process" and preventing unfair advantage or detriment). *Second,* where a plaintiff sues both an official in her official capacity *and* the government entity she works for, *then* there is redundancy. But USF SJP has not named the Board of Governors qua Board. *See Busby v. City of* Orlando, 931 F.2d 764, 766 (11th Cir. 1991) ("To keep *both* the City and the officers sued in their official capacity as defendants in this case would have been redundant and possibly confusing *to the jury*") (emphasis added).

2. **The members of the Board of Governors are also proper defendants; USF SJP'S injuries are traceable to them, and an injunction against them will provide meaningful relief**.

The members of the Board of Governors appointed Chancellor Rodrigues. They are his boss. Fla. Stat. § 20.155(3). And under the Florida

Constitution, it is they, not the Chancellor, who "govern the state university system" and are "fully responsible" for managing it. Fla. Const. Art. IX §§ 7(a) & (d). USF SJP's injuries are both traceable to and redressable by the Board of Governors. The Board delegates functions to its appointed Chancellor. But it is constitutionally vested with control. It retains the authority to enforce (or revoke) its Chancellor's orders, policies, and edicts. The Board of Governors can therefore revoke or order the Chancellor to revoke the Deactivation Order—which is one of the forms of relief that USF SJP seeks.

At the same time, the Board of Governors also has broad and coercive enforcement powers over the USF Defendants. Fla. Stat. § 1008.322(5). As a result, an injunction directing the Board of Governors to exercise its coercive powers to make sure that the USF Defendants never carry out the Deactivation Order would also provide relief.

Even so, and in the face of this evidence of traceability and redressability, Chancellor Rodrigues and the members of the Board of Governors still deny that USF SJP has standing to sue them. They make four arguments. But all of them, addressed in the next sections, are unavailing.

10

### a. *The Chancellor and the Board of Governors' role is not usurped, and cannot be usurped, by USF's trustees.*

The first argument that the Chancellor and the Board of Governors make is that they "neither recognize[ ] nor deactivate[ ] student groups; *that role is filled by the universities*." ECF 60 at 8 (emphasis added). But that point, even if it were accurate, negates neither traceability nor redressability.

Deactivating SJP chapters was not even under consideration by any state university in Florida— until the Chancellor promulgated the Order (in "consultation with" the Governor). The Board of Governors let that happen, and by doing so, ratified the Order. The Chancellor and the Governors have the power and authority to rescind the Order, reversing what they did or what they let happen.[7] An injunction compelling them to do that will restore USF SJP's and its members' rights of association and

---

[7] Unless one assumes that that the Chancellor promulgated the Deactivation Order *ultra vires*, without the Board of Governor's consent, then the Chancellor and the Board share responsibility. But even if the Chancellor acted outside his authority, the members of the Board of Governors have ratified the Order by not revoking it, making it traceable to and redressable by them. The Board of Governors has the authority to revoke the Order or to make Chancellor Rodrigues do that.

speech, remove the chill on their speech and association, and help repair

the organization's reputation.

> **b.** *The Deactivation Order puts USF SJP under a credible*
> *imminent threat of deactivation.*

The second argument that the Chancellor and the Board make is that "a

reasonable listener would likely infer" that the Board does not

"imminently" intend to "force deactivation." Prelim. Inj. Opp. (ECF 60) at

11. But the Order is specific and mandatory. Student SJP chapters "must be

deactivated." The Chancellor and the Board not only have not rescinded

the Order. They continue to defend it as, in their view, a "reasonable

reaction that does not run afoul of the First Amendment." *Id.* at 5. These

actions—both leaving a *mandatory* Order in place and now defending its

constitutionality—reinforce rather than dispel the substantial continuing

risk of future enforcement, creating standing. *See Dream Defenders*, 57 F.4th

at 887-88 (noting that a court can infer imminence and credible risk of

enforcement from government's defense of an enactment in litigation and

rejecting arguments, in that case, similar to the ones the Governor is

making again in this case). *See also Wollschlaeger v. Governor*, 848 F.3d 129,

1305 (11th Cir. 2017) (en banc) (same); *Pernell v. Fla. Bd. Of Governors of the State Univ. Sys.*, 641 F. Supp.3d 1218, 1255 (N.D. Fla. 2022) (same).[8]

The Chancellor and the Governors' arguments also discount chill. The ongoing existence of a mandatory order, and the lingering threat of deactivation, which the Chancellor and the Board of Governors not ruled out, are objectively causing a chill here; and unless the Chancellor and the Governors rescind the Order, it will understandably continue to objectively chill protected speech, whether or not they currently have an imminent plan to enforce it. As the Eleventh Circuit clarified in *Speech First*, a case

---

[8] Defendants' citation to *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), to try to support their position that injury here is not sufficiently imminent, is off base. Standing failed in *Clapper* substantially because the plaintiffs could not show that the government was targeting *them* — it was speculative whether the government would ever try and succeed in getting judicial authorization to intercept and in fact intercept *their* communications. Here, by contrast, the Deactivation Order specifically targets USF SJP — and only SJP chapters. Unlike in *Clapper*, there is no "speculative chain of possibilities" here concerning "whether the government would target" USF SJP. It has done so. *See also Dream Defs.*, 57 F.4th at 887-88 (emphasizing that injury-in-fact is satisfied by evidence of "a '*substantial risk*' of *future* harm," a standard that while foreclosing injury dependent on speculative, "highly attenuated" chains of possibility, does not require certainty) (emphasis added).

Defendants notably do not discuss or cite, the imminence of enforcement "is not decisive." *Speech First*, 32 F.4th at 1120.

> **c.** **The Deactivation Order has legal effect—and even if it didn't, it has caused real injuries- in-fact, which an injunction, directed to the Chancellor and the Board of Governors, will redress.**

The Chancellor and the Board's third argument is that the Deactivation Order was "not formal Board action, has no independent legal effect, and [therefore] cannot be enforced …." ECF 60 at 9. But even an ultra vires enactment can cause as much injury as a valid one. It is too facile for Defendants to say we didn't mean it, it's only a piece of paper, it has no independent "legal effect"— or it was just an "exhortation to vigilance." Prelim. Inj. Opp. at 21. The Order has had demonstrable damaging effects. It's caused injuries-in-fact.

If the Chancellor or the Board really think the Order is invalid, then they should say so and rescind it. By not rescinding it, they are maintaining and prolonging its harmful effects, including its threat of enforcement, justifying judicial relief. *See Dombrowski v. Pfister*, 380 U.S. 479, 482, 487, 494 (1965) (noting that even speech restrictions promulgated without "any expectation" of enforcing them has a "chilling effect on protected

14

expression" because their "existence" creates "a 'danger zone' within which protected speech may be inhibited"). *See also Green Party of Tenn. v. Hargett*, 791 F.3d 684, 695-96 (6th Cir. 2015) ("While defendants have not enforced or threatened to enforce this statute …., they also have not explicitly disavowed enforcing it in the future. In such situations, the Supreme Court has held that plaintiffs have standing …. ") (citing *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979).[9]

### d. *The Order's chilling effect is very far from speculative.*

The Chancellor and the Board's fourth argument is that "a chilling effect … is too speculative … and, as to the Board of Governors, is objectively unreasonable." ECF 60 at 11. But the chilling effect here is not speculative.

The Chancellor and the Board promulgated a still unrescinded Order that USF SJP "must be" deactivated. The Order also suggests or implies that USF SJP's continued operation could be a felony under state law. The resulting chill is real, objectively reasonable, and not speculative.

---

[9] The authorities cited above show that in a First Amendment speech case, and particularly for political speech, the "threat of prosecution" factor is often, at a minimum—and correctly—greatly relaxed.

Applying the Eleventh Circuit's test, the fundamental injury-in-fact

question here is would "the average college-aged student … be

intimidated?" *Speech First*, 32 F.4th at 1124. The answer is simply: yes. In

this environment, how could the average student *not* be intimidated? SJP

chapters at Columbia, Brandeis, George Washington, and Rutgers (a public

university also covered by the First Amendment) have already been shut

down.[10] The university Presidents at Penn and at Harvard have been

ousted. Three Palestinian college students have been shot.[11] There have

been widespread reprisals against voices critical of Israeli policies.[12]

Members of the U.S. House have introduced a resolution condemning the

_____

[10] *Campus Crackdowns Have Chilling Effect on Pro-Palestinian Speech*, New
York Times (Dec. 17, 2023),
https://www.nytimes.com/2023/12/17/us/campus-crackdowns-have-
chilling-effect-on-pro-palestinian-speech.html.

[11] https://www.washingtonpost.com/nation/2023/12/01/palestinian-
students-shot-burlington-vermont/.

[12] *'The Palestine Exception': Why Pro-Palestinian Voices Are Suppressed in the
US*, https://www.theguardian.com/world/2023/nov/01/palestine-us-
activism-firings-speech [https://perma.cc/NL2H-S5UW]
 *Pro-Palestinian Views Face Suppression in US Amid Israel-Hamas War*,
https://www.theguardian.com/us-news/2023/oct/21/israel-hamas-
conflict-palestinian-voices-censored [https://perma.cc/59C8-E5HP].

slogan "From the river to the sea, Palestine will be free" and equating it
with antisemitism.[13] The Florida House and Senate have introduced bills
that would make any student who "promotes" a foreign terrorist
organization ineligible for institutional or state grants, financial aid,
scholarships, or tuition assistance, and subject to out-of-state fees.[14] The
average-college aged student, having joined USF SJP, considering joining
USF SJP, or participating in a USF SJP event, unquestionably has objective
reasons to be intimidated. The chilling effect here is very far from
speculative.

### 3. Governor DeSantis is a proper defendant: USF SJP'S injuries are traceable to him, and an injunction against him will provide meaningful relief.

Governor DeSantis originated and instigated the Deactivation Order
and has the power to rescind it, making him a proper defendant too. There

---

[13] U.S. House Resolution 883 (2023-2024),
https://www.congress.gov/118/bills/hres883/BILLS-118hres883ih.pdf.
House members may not know that Israel's Likud Party platform has
contained a very similar phrase: "Between the Sea and the Jordan [river]
there will only be Israeli sovereignty." *See* Rashid Khalidi, *It's Time to
Confront Israel's Version of "From the River to the Sea,"* The Nation, Nov. 22,
2023, available at https://perma.cc/Y5MA-GFRV**.**

[14] *See* https://www.flsenate.gov/Session/Bill/2024/465; *See also*
https://www.flsenate.gov/Session/Bill/2024/470.

is no Article III barrier to a suit against him here. The evidence shows the

requisite "substantial likelihood" that the Deactivation Order is "fairly

traceable" to him and that its harms are "redressable" by him. *Duke Power

Co.*, 438 U.S. at 75 n.20 ("Our recent cases have required no more of a

showing than that there is a 'substantial likelihood' that the relief requested

will redress the injury claimed"); *Austin v. Univ. of Fla. Bd. of Trs.*, No.

1:21cv184-MW/GRJ, 2022 U.S. Dist. LEXIS 241141, at *13 (N.D. Fla. Jan. 3,

2022) (same).

> ### a.  *The Deactivation Order is traceable to Governor DeSantis.*

The facts show the requisite substantial likelihood that Governor

DeSantis both originated and instigated the Deactivation Order.

On October 23, 2023, Florida state Rep. Randy Fine, once one of the

Governor's staunchest allies and his Jewish outreach chair, published an

op-ed in *The Washington Times* announcing that he was switching his

support, in the upcoming Presidential primary, from the Governor to

former President Trump. In that article, Fine denounced DeSantis—for

failing to cause Florida's state universities to "kick kids out" for advocating

on campuses for human rights for Palestinians.[15] The resulting connection

between Fine's op-ed and DeSantis' decision to promulgate the

Deactivation Order is not speculative. Fine himself drew the connection.

The day of the Deactivation Order, referring to it, he posted on social

media taunting Governor DeSantis and connecting the Deactivation Order

(on October 24) to his op-ed the day before (on October 23):

> Why did it take me endorsing @realDonaldTrump to get you to
> take action? I gave you all this on October 9th.[16]

Corroborating Fine's statement, Governor DeSantis has also himself

confirmed that *he* originated and instigated the Deactivation Order. The

weekend after the Order, on NBC's *Meet the Press,* he was asked:

> "This week, **you** called for the banning of pro-Palestinian groups
> from Florida state colleges … Your Republican challenger Vivek
> Ramaswamy says … 'It's a shameful political ploy. It's
> unconstitutional. It's utter hypocrisy for someone who railed
> against left-wing cancel culture.' What is your response …?"

-------------------

[15] Randy Fine, *Donald Trump has never let us down*, The Washington Times
(Oct. 23, 2023),
https://www.washingtontimes.com/news/2023/oct/23/donald-trump-
has-never-let-us-down/ .

[16] @VoteRandyFine, Twitter (Oct. 24, 2023, 2:56 PM),
https://twitter.com/VoteRandyFine/status/1716906577909645714
[https://perma.cc/8X83-3G92].

In response, the Governor denied neither his responsibility nor his role. He conceded both.[17] Then, at the third Republican presidential primary debate ten days later, on Nov. 8, Governor DeSantis again confirmed that *he* instigated the Deactivation Order, boasting that "*I* already acted in Florida. We had a group, Students for Justice in Palestine. We deactivated them."[18]

Next, on November 15th, DeSantis's press secretary, Jeremy Redfern, emphasized, again, Governor DeSantis' responsibility for the Order. He told National Review that "*Governor DeSantis* and Chancellor Roderigues directed the immediate deactivation of these organizations."[19]

_____

[17] @MeetthePress, Twitter (Oct. 29, 2023, 11:39 AM, https://twitter.com/MeetThePress/status/1718668861011112300 (video).

[18] Third Republican Presidential Primary Debate (Nov. 15, 2023), video and transcript, at 27:40, available at https://www.rev.com/transcript-editor/shared/grQgT4NW1cphoyW5zuSh-aeXSCh5jD685St7s6Qz2zSADXzwF0XpKCGzzqMVG1TGyiZuzeTI4nMdtd5iLz54n-4B1Yc?loadFrom=PastedDeeplink&ts=1660.95 [https://perma.cc/JC95-U6PG]**.**

[19] *Florida Walks Back Ban,* National Review (Nov. 15, 2023), https://www.nationalreview.com/news/florida-walks-back-ban-on-students-for-justice-in-palestine-amid-constitutional-concerns/ [https://perma.cc/3JEZ-LGZE].

**b.** *The harms caused by the Order are redressable by Governor DeSantis: in the same way he used his power and authority to instigate the Deactivation Order, he can also use them to rescind it—or make that happen.*

DeSantis was personally involved in originating and instigating the Deactivation Order. And he can use the same power he used to originate and instigate it to rescind it. That is enough to show redressability. *See Joseph v. Chronister*, No. 20-11073, 2021 U.S. App. LEXIS 30370, at *19-20 (11th Cir. Oct. 12, 2021) (Jordan, J., concurring) ("[I]t does not suffice if the injury complained of is th[e] result [of]] the independent action of some third party …, but that does not exclude injury produced by [the defendant's] determinative or coercive effect upon the action of someone else.").

All the same, Governor DeSantis claims—casuistically— that he has no authority to rescind the Deactivation Order he instigated, citing Art. IX, § 7 of the Florida Constitution and §§ 1001.70 and 1001.706 of Florida's Statutes. DeSantis MTD (ECF 62) at 14. His argument fails. He can undo what he did. And the provisions he cites don't (and couldn't) prevent that.

Art. IX § 7 creates the state university system, local boards of trustees, and the statewide board of governors; while Fla. Stat. § 1001.70 specifies

21

who appoints the members of the Board of Governors (with 14 of the 17

appointed by the Governor); and Fla. Stat. § 1001.706 sets out the powers

and duties of the Board of Governors. They do not address the issue here,

which is *what happens when* the Governor take actions with determinative

or coercive effect on matters that might otherwise fall within the purview

of the Board of Governors— actions that, it bears noting, Governor

DeSantis has been wont to do.[20]

The classic case illustrating how one State official or agency's

"determinative or coercive effect" on another can render actions that might

otherwise be the responsibility of the latter (Chancellor Rodrigues)

traceable to and redressable by the former (Governor DeSantis) is *Bennett v.*

*Spear*, 520 U.S. 154 (1997). In that case, the plaintiffs sued *the federal Fish and*

*Wildlife Service,* claiming that a reclamation projection being undertaken by

the Bureau of Reclamation, a different federal agency, would adversely

---

[20] *See* American Association of University Professors (AAUP), *Report of a Special Committee: Political Interference and Academic Freedom in Florida's Public Higher Education Program (Dec. 2023),* available at https://www.aaup.org/file/AAUP_Special_Committee_Report_on_Florida_final.pdf [https://perma.cc/QNB8-2JBY ]. *See also Pernell,* 641 F. Supp.3d 1218.

affect their use of water sources. Before the Supreme Court, the Service challenged the plaintiffs' standing to sue it, arguing that their injury was neither traceable to it nor redressable by a judgment against it, that the proper defendant was the Bureau, which had "ultimate responsibility" for the project. *The Supreme Court disagreed*. Confirming standing to sue the Service, the Court held that even though the Bureau had ultimate authority over the project, the plaintiffs' injury was still traceable to and remediable by the Service—because the Service had issued an opinion that, although not binding the Bureau, plausibly had a determinative or coercive effect on it, causing the Bureau to go forward with the project. Similarly, here, because Governor DeSantis plausibly caused Chancellor Rodrigues to promulgate the Deactivation Order—Rodrigues would have ignored DeSantis at his peril—USF SJP's injury is traceable to both of them and redressable by either of them. See also *Speech First*, 32 F.4th at 1123 (citing *Bantam books, Inc. v. Sullivan*, 372 U.S. 58 (1963)) (noting that "Neither formal punishment nor the formal power to impose it is strictly necessary to exert an impermissible chill on First Amendment rights—indirect pressure may suffice," and that "the students targeted here are—for the

most part — teenagers and young adults who, it stands to reason, are more likely to be cowed [even] by subtle coercion ….")

At the stage of a preliminary injunction, USF SJP has presented sufficient evidence — and in sufficient form — to establish its standing to bring claims against Governor DeSantis. [21]

### 4. The members of USF's Board of Trustees are also proper defendants.

No party has disputed USF SJP's standing to sue the USF defendants (its president and the members of its board of trustees). And the USF defendants either moved to dismiss nor joined any other defendant in opposing a preliminary injunction. But since standing to sue them is jurisdictional, this section will address that question.

The Deactivation Order is addressed to the USF defendants. It tells *them* that USF's SJP chapter "must be deactivated." *Id.* They are supposed

---

[21] As the Eleventh Circuit explained in *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995), "To support a preliminary injunction, a district court need not find that the evidence positively guarantees a final verdict in plaintiff's favor … .[may] rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding." 51 F.3d at 985 (cleaned up).

to carry out that order. And although they have not enforced it—so far—they have not renounced it or committed not to enforce it either; and by not renouncing it, they have sustained and reinforced USF's injuries in fact, which are, therefore, "fairly traceable" to them.

USF SJP's injury is also *redressable* by the USF Defendants. They can enforce the Deactivation Order. And a court order barring them from enforcing it will prevent its enforcement, thus providing relief that USF SJP seeks. And a substantial likelihood of even partial relief suffices for standing purposes. *Wilding v. DNC Serv. Corp.*, 941 F.3d 1116, 1127 (11th Cir. 2019) (citing *Made in the USA Found. v. United States*, 242 F.3d 1300, 1310-11 (11th Cir. 2001)). *See also Pernell*, 641 F. Supp. at 1263-64 ("Enjoining the members of the Board of Governors … would remove some chill …. *So would enjoining the members of USF's Board of Trustees …* providing[ing] at least partial redress*.") (emphasis added).

## II.   Defendants are subject to suit under *Ex Parte Young*.

For the same reasons that support Article III standing, *Ex Parte Young's* "exception" to sovereign immunity is satisfied here too. At the point that an injury becomes sufficient to confer Article III for claims against any particular defendant, there is also a sufficient "connection" to this case

make that defendant subject to suit under *Ex Parte Young.* 209 U.S. at 157;

*Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015).

## III.  This case is ripe for adjudication.

There is a justiciably ripe case and controversy here. And although

Defendants now suggest, for the first time, in litigation, that they only ever

meant the Order to be hortatory, that it was merely an "open letter" (ECF

60 at 21), a recommendation rather than a mandate, and that the Court

should therefore "infer that the Board does not intend to imminently take

further steps" (ECF 60 at 11)—that suggestion fails here much as it did in

*Wollschlaeger v. Governor of Florida*, where the en banc Eleventh Circuit

rejected similar arguments that an enactment "merely" contained

"recommendations" and should be interpreted as "hortatory." 848 F.3d at

1305.

*First,* Defendants' suggestion that the Deactivation Order was just

cautionary or contemplative—an exhortation to "vigilance"— "cannot

overcome the chilling effect of [its] plain language." *Citizens For Responsible

Gov't State PAC v. Davidson*, 236 F.3d 1174, 1192-93 (10th Cir. 2000). The

Order says "*must* deactivate.

*Second,* the Deactivation Order is *still* in place. No Defendant here has disavowed it. And the Governor's press secretary has called university administrators' failure, so far, to carry out the Order "reprehensible."[22] That is the opposite of disavowal.

*Third¸* USF SJP's injury-in-fact is *ongoing.* Its speech is still chilled, its freedom of association still curbed, its reputational injury still occurring.

*Fourth*, Defendants' belated attempts to recharacterize the Order — urging trust and faith in their reconsideration of its wisdom— do not conjure an Article III defense. The First Amendment "protects against the Government; it does not leave us at the mercy of noblesse oblige." *United States v. Stevens*, 559 U.S. 460, 480 (2010). And where students are "looking down the barrel of the Board's disciplinary gun, [they] are not required to guess whether the chamber is loaded." *Wollschlaeger*, 848 F.3d at 1303-1306.

Ripeness also is not defeated by Defendants' additional suggestion that this case would benefit from further factual development. The question of

---

[22] *Florida Walks Back Ban,* National Review (Nov. 15, 2023), https://www.nationalreview.com/news/florida-walks-back-ban-on-students-for-justice-in-palestine-amid-constitutional-concerns/ [https://perma.cc/3JEZ-LGZE].

the Deactivation Order's constitutionality is legal. It does not require

further factual development.

## IV.  USF SJP has a substantial likelihood of success on the merits, satisfying the first requirement for preliminary injunctive relief.

Until now, this brief has focused on justiciability.

Now, to the merits.

The outcome of the First Amendment claim here will be governed,

primarily, by two precedents: (1) *Healy v. James,* 408 U.S. 169 (1972)

and(2) *Humanitarian Law Project v. Holder*, 561 U.S. 1 (2010). The

Deactivation Order runs headlong into both of them. It cannot be sustained

under either of them.

### A.  The Deactivation Order impermissibly punishes USF SJP for — at most— mere association with National SJP, thus running headlong into *HLP v. Holder.*

Neither "guilt by association" nor "guilt for association" is a

permissible basis for restricting speech. *NAACP v. Claiborne Hardware Co.*,

458 U.SD. 886, 925. But that is the only theory behind the Deactivation

Order, which states, on its face, that "*Based on the National SJP's* support of

terrorism, in consultation Governor DeSantis, the student chapters must be

deactivated." Exhibit A (emphasis added). This is reliance on guilt by

association—USF SJP "must" be deactivated because the Governor disapproves of *National* SJP. And it is fatal. Defendants have offered no evidence of any unprotected speech by USF SJP (or any conduct in violation of law or university rules or regulations).

The Deactivation Order invokes Florida's "material support" statute, claiming that provides license to regulate USF SJP's speech. But that is wrong. Fla. Stat. § 775.33. The statute requires evidence of "material support" to a designated foreign terrorist organization. And Defendants have provided none.

Defendants have offered no evidence that USF SJP has ever provided any "material" support to any terrorist organization (or even to National SJP)— no evidence of any of the forms of support catalogued in, and proscribed by, Florida's statute, not "property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safe houses, false documentation or identification, communications equipment,

facilities, weapons, lethal substances, explosives, personnel, or transportation." Fla. Stat. § 775.33 (c).

Likewise, Defendants have provided no evidence that USF SJP has ever acted, as the statute also requires, in "under the direction and control of a designated foreign terrorist organization. " Fla. Stat. § 775.33(5(a)(1). Nor even under the direction and control of National SJP.

In short, Defendants have offered no evidence that USF SJP has engaged in any act that violates Florida's material support statute, Fla. Stat. § 775.33. As a result, the Deactivation Order runs straight into *HLP v. Holder*. For as the Supreme Court made clear in *HLP v. Holder*, when the conduct triggering coverage under a material support is speech, regulation under the statute must be very narrowly tailored. The *only* speech that can be regulated relying on a material support statute is speech "under the direction of, or in coordination with" a "designated foreign terrorist organization. 561 U.S. at 26, 31. Nothing broader. And there is no evidence of any such speech by USF SJP here.

The Supreme Court was explicit in establishing limits in *HLP v. Holder.* The Deactivation Order exceeds those limits. "We in no way suggest," the Supreme Court cautioned, that "a regulation of independent speech,"

neither under the direction of nor coordinated with a designated foreign terrorist organization, "would pass constitutional muster, even if the Government were to show that such speech benefits foreign terrorist organizations." 561 U.S. at 39. And the Court also cautioned that it was also in no way suggesting that "Congress could extend the same prohibition on material support … to domestic organizations." *Id.* at 39. Here, the Deactivation Order transgresses both these limits.

Without any evidence of any action ever taken by USF SJP "under the direction of, or in coordination with" Hamas (or any other designated foreign terrorist organization), Defendants cannot constitutionally restrict USF SJP's speech relying on Fla. Stat. § 775.33. *HLP v. Holder* squarely forbids it. And all that is left, therefore, is a Deactivation Order targets USF SJP *for its perceived association with National SJP* – which puts the Order on a collision course with *Healy v. James*. Under *Healy*, a student organization's affiliation with a national organization, even if shown, is inadequate grounds for denying recognition, disbanding, or "deactivating" that organization. It is a First Amendment violation.

Perhaps realizing the inadequacy of their actual justification for the Deactivation Order, Defendants pivot. In their brief, they now urge a new

theory, never mentioned in the Deactivation Order—a new suggestion that the Deactivation Order might be justifiable to "prevent[ ] interference with the educational environment in the form of disruption." Prelim. Inj. Opp. (ECF 60) at 5. But that's a nonstarter. Defenses for interfering with First Amendment rights cannot be "hypothesized or invented post hoc." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2432 n.8 (2022) (cleaned up); *United States* v. *Virginia*, 518 U. S. 515, 533 (1996). Because the Deactivation Order relied on National SJP's supposed support for terrorism as its only ground, the Order must rise— or more realistically, fall—on that asserted justification.

Even so, Defendants' new defenses would fail even if they were cognizable now.

**B.  The Deactivation Order is also both viewpoint discriminatory, and not justified by any of Defendants' impermissibly newly concocted concerns about "disruption."**

In elementary and secondary school settings, the "Tinker test" is generally the standard for judging restrictions on students' free speech, and it is a deferential test. *See Tinker v. Des Moines Indep. Sch.* District, 393 U.S. 503 (1969). But unlike elementary and secondary administrators, college administrators do not have an *in loco parentis* relationship with students.

Therefore, they are not entitled to *Tinker*'s deferential standard. *Speech First,* 32 F.4th at 1127 n.6. Even so, the Tinker test is still a useful counterpoint here—because *even if* that deferential applied, and *even if* Defendants could permissibly concoct and introduce post-hoc justifications now, none of that would save them. The Deactivation Order still would not survive First Amendment scrutiny.

*First*, "by its own terms, even in the elementary and secondary school setting, Tinker's deferential standard doesn't apply to viewpoint-based restrictions …." *Speech First,* 32 F.4th at 1128 n.6. And the Deactivation Order is a viewpoint-based restriction. It singles out a particular group— SJP chapters. It discriminates against them—because of their viewpoint. It does not regulate speech on the subject of Palestine and Israel by all students, or by any other students, only by student members of SJP.[23]

---

[23] The Deactivation Order does not address the disruption, for example, that might occur if groups marched wearing T- shirts emblazoned with the words "Israel Defense Forces"(or "IDF"),[23] or if groups marched draped in Israeli flags[23]—even though those incidents could foreseeably inflame and traumatize Palestinian students who have family members dying in Gaza, as Israel and the IDF carry out "one of the most intense civilian punishment campaigns in history." AP News, *Israel's military campaign in Gaza seen as among the most destructive in history, experts say,* https://apnews.com/article/israel-gaza-bombs-destruction-death-toll-

*Second*, even if the Deactivation were viewpoint neutral, which it is not, the Supreme Court also emphasized in *Tinker* that "undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." 393 U.S. at 508. Because "[a]ny departure from absolute regimentation may cause trouble … or cause a disturbance," unless a university offers specific constitutionally valid reasons for restricting speech, "our Constitution says we *must take this risk*." *Id.* at 508 (emphasis added). Defendants' stated rationales for the Deactivation Order flunk that test. Their newly expressed "grave concern" about possible disruption (ECF 60 at 5) is undifferentiated and general, not specific, and unsubstantiated by any of the exhibits they have attached to their Brief. None of those exhibits (ECF 60-1 through 60-41) identify any unprotected speech—by any SJP chapter, much less by USF SJP.

Defendants' brief mentions campus "walk-outs" on Oct. 7 "on campuses in Florida and nationwide." Prelim. Inj. Opp. (ECF 60) at 25. But they point to no substantial disruption *at USF*, much less any evidence of

---

scope-419488c511f83c85baea22458472a796 (quoting University of Chicago professor Robert Pape).

any disruption *caused by USF SJP*. Defendants also allude to "injuries and hospitalizations" at a *UF* event and an "arrest" during a rally at *FAU*. But neither incident occurred at USF or involved USF SJP.

Similarly, footnote 20 in Defendants' brief (ECF 60 at 27 n.20) contains a link to a supposedly probative video.[24] But that video isn't probative. It shows an impassioned discussion between two students during an Israeli hostage solidarity event— where one yells at another about the cultural origin of hummus and shawarma![25] That exchange had nothing to do with Hamas, and there is no evidence it involved any members of USF SJP.

The shallow insufficiency of Defendants' evidence on the disruption issue, on which, under the Tinker test, *they* would bear the burdens of production and proof, dooms their new "disruption" defense even if that defense is considered.

_____

[24] @ElbazStarinsky, Twitter (Nov. 16, 2023 5:38PM) (video), https://twitter.com/ElbazStarinsky/status/1725297372048027774?s=20.

[25] *See* ECF 60 at 27 n.20; The nature of this exchange is audibly about 'culture theft' and whether certain foods are 'Israeli.' The unidentified man yells at the other students "you tried to erase our existence… you call falafel 'Israeli' falafel, you call hummus 'Israeli' hummus, shawarma is 'Israeli' shawarma!" There is no evidence in this exchange of violence or of support for Hamas.

## V.   The presence of irreparable injury, the balance of the equities, and the public interest all favor preliminary injunctive relief.

Irreparable injury, the balance of the equities, and the public interest all favor preliminary relief here. In fact, they are hardly disputable.

*First,* the imminent threat and the ongoing chill on USF SJP's exercise of First Amendment rights are irreparable. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976); *Cate v. Oldham*, 707 F.2d 1176, 1188 (11th Cir. 1983); *Austin v. Univ. of Fla. Bd. of Trustees*, 580 F. Supp. 3d 1137, 1173 (N.D. Fla. 2022), *judgment vacated in part, appeal dismissed*, No. 22-10448-GG, 2023 WL 5051221 (11th Cir. Mar. 20, 2023).

*Second*, the balance of the equities and the public interest support a preliminary injunction here. Without injunctive relief, the chill on USF SJP's speech and the damage to its reputation will continue, and neither Defendants nor the public have any "legitimate interest in enforcing an unconstitutional" order. *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006); *Honeyfund.com, Inc. v. DeSantis*, 622 F. Supp.3d 1159, 1185 (N.D. Fla. 2022). Enforcing "[t]he First Amendment, in particular, serves significant societal interests." *First Nat'l Bank of Boston v. Bellotti*, 435

U.S. 765, 776 (1978); *Honeyfund*, 622 F. Supp. at 1185. Leaving an Order in place that violates the First Amendment serves none.

## VI. Defendants' quibble about a "shotgun" pleading is meritless.

Chancellor Rodrigues and the Board of Governors gripe that USF SJP has filed a "shotgun" pleading, combining three First Amendment *theories* — freedom of association, speech, and assembly — in a single count. Their argument lacks merit.

In *Weiland v. Palm Beach Cnty . Sheriff's Off.*, the Eleventh Circuit divided "shotgun" pleadings into four archetypes, all of them unified by a failure in some way "to provide the defendant with adequate notice of the claims against them." Charles Wright & Arthus Miller, *Federal Practice & Procedure* § 1376; *Bartol v. Barrowclough*, 251 F. Supp. 3d 855 (E.D. Pa. 2017). But there is no such defect in USF SJP's complaint. Chancellor Rodrigues and the Board of Governors are not objecting to lack of notice. They can't. Their gripe specifies USF SJP's First Amendment theories. They know what those theories are.

Still, the Chancellor and the Board of Governors claim that the variant applicable here is Weiland's third archetype — a complaint that

"commits the sin of not separating into a different count each cause of action or claim for relief." ECF 61 at 4. But the accusation doesn't fit.

*First,* there is only one cause of action here and one claim for relief: for violating the First Amendment. And combining three First Amendment *theories* in one claim is not a sin. Indeed, as the Supreme Court has pointed out, said, it often "makes little sense" to treat "speech and association claims as discrete." *Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez*, 561 U.S. 661, 680 (2010).

*Second,* facts, not legal theories, determine the adequacy of a complaint in any event. *Reeves v. Jewel Food Stores, Inc.*, 759 F.3d 698, 701 (7th Cir. 2014); *Jackson v. City of Centreville*, 899 F. Supp. 2d 1209, 1226 (N.D. Ala. 2012). Therefore, there's no basis for a motion to dismiss a complaint based on how many *theories* might sustain a single count. "A plaintiff is not required to set forth a legal theory" at all, "so long as some legal theory can be sustained on the facts pleaded in the complaint. Well-pleaded facts, not legal theories or conclusions, determine the adequacy of the complaint." *Jackson,* 899 F. Supp. at 1226 (cleaned up).

**Conclusion**

For all the reasons stated above, Defendants' motions to dismiss should be denied, and USF SJP's motion for a preliminary injunction should be granted, in their entireties.

Dated: January 14, 2024

Respectfully submitted,

/s/ *Joshua Karsh*
One of the Attorneys for Plaintiff USF SJP

Omar Saleh
(91216osaleh@cair.com
**CAIR FLORIDA**
8076 N 56th St.
Tampa, FL 33617
(833) 224-7352

Lena F. Masri**
lfmasri@cair.com
Gadeir Abbas**
gabbas@cair.com
Justin Sadowsky*
jsadowsky@cair.com
Hannah Mullen**
hmullen@cair.com
**COUNCIL ON AMERICAN-ISLAMIC RELATIONS (CAIR)**
453 New Jersey Ave SE
Washington, DC 20003
(202) 742-6420

Joshua Karsh*
jkarsh@findjustice.com
MEHRI & SKALET, PLLC
2000 K Street NW, Suite 325
Washington, DC 20006
(773) 505-7533

Roza Tawil (1038507)
roza@erchidlaw.com
**ERCHID LAW FIRM**
203 N. Armenia Ave., #101
Tampa, Florida 33609
(813) 631-7226

*Pro hac vice
**Pro hac vice applications forthcoming

***Counsel for Plaintiff USF SJP***

CERTIFICATE OF COMPLAINCE

This document, a combined reply and opposition brief, complies with the word limit of Local Rule 7.1(F) because, excluding the parts of the document exempted by the Rule, this document contains 7,534 words, relying on the word count used by Microsoft Word. This documet complies with the formatting requirements of Local Rule 5.1(C) because it is double spaced, in 14-point font, with one-inch margins on all sides, and is page numbered.

Date: January 14, 2024

*/s/ Joshua Karsh*

jkarsh@findjustice.com
MEHRI & SKALET, PLLC
2000 K Street NW, Suite 325
Washington, DC 20006
(773) 505-7533