UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

STUDENTS FOR JUSTICE IN
PALESTINE AT THE UNIVERSITY
OF SOUTH FLORIDA,

   *Plaintiff,*

*v.*                                     Case No. 1:23-cv-00281-MW-HTC

RONALD DESANTIS, in his official
capacity as Governor of Florida, et al,

   *Defendants.*

## GOVERNOR DESANTIS'S REPLY

The Governor's motion explains in detail why the Governor is not a proper party to this case. ECF 62. This Reply briefly responds to one argument made in Plaintiff's Combined Reply Brief in Support of a Preliminary Injunction & Opposition to Defendants' Motions to Dismiss ("Response") and points out one argument not made. ECF 67. Specifically, (i) *Bennett v. Spear* offers Plaintiff no shelter from the torrent of cases in this circuit holding that Article III prevents plaintiffs from haling the Governor into federal court to enjoin or compel the actions of other public officials, and (ii) even if the Governor were a proper defendant, Plaintiff has waived the argument that the Governor is not a redundant defendant.

I. **Nothing in *Bennett* Suggests That Plaintiff's Alleged Injury[1]  Is Traceable to or Redressable by the Governor.**

The Eleventh Circuit and this Court have repeatedly held that Article III prevents Governor DeSantis from being haled into federal court based on actions he did not, and cannot, take.[2] Plaintiff does not dispute that the Governor lacks legal authority to issue, or rescind, memoranda issued by the Chancellor of the Board of Governors, or to deactivate a university's student organizations. *See* Response at 17-24. Nor could it. *See* art. IX, § 7(d), Fla. Const. (establishing the Board of Governors as an independent body corporate with the authority to "operate, regulate, control, and be fully responsible for the management of the whole university system"); §§ 1001.70 and 1001.706, Fla. Stat. In fact, the Response admits that these actions are "within the purview of the

---

[1] The Governor joins the arguments made in the Board of Governors' papers that Plaintiff has not alleged a cognizable injury.

[2] *See e.g., Support Working Animals v. Governor of Fla.*, 8 F.4th 1198, 1200-04 (11th Cir. 2021) (no standing against the Governor, Secretary of State, or Attorney General in suit challenging a constitutional amendment banning greyhound racing); *City of S. Miami v. Governor*, 65 F.4th 631, 640 (11th Cir. 2023) (no standing against the Governor in suit challenging anti-sanctuary cities law enforced by local law enforcement officers and governments); *Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1255 (N.D. Fla. 2016) (no standing against the Governor to compel extension of voter registration deadline within the discretion of the Secretary of State); *Namphy v. DeSantis*, 493 F. Supp. 3d 1130, 1137 (N.D. Fla. 2020) (similar); *Falls v. DeSantis*, No. 4:22-cv-166, 2022 WL 19333278, at *1 (N.D. Fla. July 8, 2022) (no standing against Governor in suit challenging curriculum law enforced by the State Board of Education); *Common Cause Fla. v. DeSantis*, No. 4:22-cv-109-AW-MAF, 2022 WL 19978293, at *3 (N.D. Fla. Nov. 8, 2022) (no standing against the Governor in suit challenging congressional districting map implemented by Secretary of State); *Denton v. Bd. of Governors*, No. 4:22-cv-341-RH-MAF, ECF 65, at *3-4 (N.D. Fla. June 12, 2023) (*see infra*).

2

Board of Governors." Response at 22.

Nevertheless, the Response claims that a string of public comments by the Governor, his spokesman, and others crediting him with the Memorandum are sufficient to prove traceability and redressability under the United States Supreme Court's decision in *Bennett v. Spear*, where petitioners established Article III standing to challenge a "biological opinion" issued by the U.S. Fish and Wildlife Service because the opinion influenced the Bureau of Reclamation to drain the reservoirs that irrigated their ranches. 520 U.S. 154, 167 (1997). Plaintiff's reliance on *Bennett* is misplaced for three reasons.

First, Justice Scalia's opinion makes clear that the statutory scheme in *Bennett* left the Bureau no choice but to follow the recommendation in the Service's biological opinion. While the Bureau was "technically free to disregard the Biological Opinion and proceed with its proposed action, . . . it d[id] so at its own peril (and that of its employees), for 'any person' who knowingly 'takes' an endangered or threatened species is subject to substantial civil and criminal penalties, including imprisonment." *Id.* at 170. Due to these penalties, the biological opinions had "virtually determinative effect." *Id.*[3]

---

[3] The other two cases cited in passing by Plaintiff are similarly distinguishable. The book publisher plaintiffs in *Bantam Books* overcame *Ex parte Young* and established Article III standing because, while Vermont's Commission to Encourage Morality in Youth did not itself possess prosecutorial authority, Commission notices deeming publications objectionable were "phrased virtually as orders" and "invariably followed up by police visitations." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 68 (1963). Similarly, the plaintiffs in *Speech First, Inc. v. Cartwright* established standing because while the "Just Knights

Plaintiff, on the other hand, has not shown that the University's Board of Trustees is de facto required to adopt the recommendation in Chancellor Rodrigues's Memorandum. On the contrary, the fact that the University has not deactivated its SJP chapter proves that the Memorandum leaves the University plenty of discretion. Accordingly, *Bennett* is inapposite.

Second, Plaintiff uses the wrong comparator. The Response likens the Governor to the Fish and Wildlife Service and Chancellor Rodrigues to the Bureau of Reclamation. But this analogy is flawed. The final decisionmaker in *Bennett* (the "action agency," as Justice Scalia called it) was the Bureau; the action agency here is the University. The governmental actor that influenced the action agency in *Bennett* was the Fish and Wildlife Service; the governmental actor that allegedly attempted to influence the action agency here is Chancellor Rodrigues, by way of the Memorandum. The Governor is alleged merely to have influenced Chancellor Rodrigues to attempt to influence the action agency. In other words, compared to the defendant in *Bennett*, the Governor is another full step removed from the action agency and the alleged injury. The Governor's *Bennett* analogue is therefore not the Fish and Wildlife Service, but the President, who appoints the director of the Fish and Wildlife Service and who

---

Response Team" had no prosecutorial authority, it referred reports of "bias-related incidents" to the office of student conduct and the police department. *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1117 (11th Cir. 2022). Here, neither Chancellor Rodrigues, the University, nor the University's SJP chapter face possible prosecution for not taking the Governor's preferred actions.

presumably attempts to influence the director's actions on occasion.[4] *See* 16 U.S.C. § 742b(b). Of course, then-President Bill Clinton was not—and could not have been—a defendant in *Bennett*. Among other reasons, that is because standing theories relying on multiple inferential steps between a defendant and the alleged harm do not establish traceability and redressability. *See Falls v. DeSantis*, 609 F. Supp. 3d 1273, 1283 (N.D. Fla. 2022) (finding plaintiff teachers' "theory of traceability and redressability flow[ing] from the Board [of Education] to the school district, from the school district to the teachers' school, and—only then—to the teachers . . . simply requires too many inferential leaps to demonstrate standing at the preliminary injunction stage").

Third, Plaintiff does not allege how the Governor influenced Chancellor Rodrigues to issue the Memorandum or, by extension, how this Court could order him to influence Chancellor Rodrigues to rescind it. In *Bennett*, the Fish and Wildlife Service issued a biological opinion that had "virtually determinative effect" over the Bureau of Reclamation's decision of whether to lower the reservoir water levels. Plaintiff, however, does not even speculate about which of the Governor's action(s) was "virtually determinative" of Chancellor Rodrigues decision to issue the Memorandum. *See* Response at 21 ("[I]n the same way [the Governor] used his power and authority to instigate the Deactivation Order, he can also use them to rescind it—or make that

---

[4] In fact, while the President appoints and may remove the director of the Fish and Wildlife Service, Chancellor Rodrigues was appointed by and answers to the Board of Governors, not Governor DeSantis. § 20.155(3), Fla. Stat.

5

happen."), 23 ("Rodrigues would have ignored DeSantis at his peril."). This cryptic (non)allegation is perhaps strategic, as this Court has already rejected other plaintiffs' attempts to drag the Governor into lawsuits based on his typical means of influence, such as his appointment and suspension powers, his veto, and the general clout that comes with being the state's chief executive.

For instance, in *Denton*, students at Florida Agricultural and Mechanical University ("FAMU") brought claims under Title VI and the Equal Protection Clause of the Fourteenth Amendment alleging, among other things, a lack of adequate improvements in FAMU's facilities and duplication of FAMU's non-core programs. *Denton v. Bd. of Governors*, No. 4:22-cv-341-RH-MAF, ECF 34 (N.D. Fla. Jan. 9, 2023). The Governor, the Board of Governors (and Chancellor Rodrigues), the State Board of Education (and Commissioner of Education Manny Diaz), and the State of Florida were named as defendants. Like the Plaintiff here, the students argued that their alleged injuries were traceable to and redressable by the Governor because he "appoints each member of the BOG"[5] and "regularly presents himself as able to work the budget process to achieve his budgetary goals and priorities, and publicly boasts of using his official powers to spearhead initiatives." *Id.* ECF 44, at *7-8 (N.D. Fla. Mar. 1, 2023).

---

[5] This was inaccurate. The Governor appoints fourteen members of the Board of Governors. Art. IX, § 7(d), Fla. Const. The commissioner of education, the chair of the advisory council of faculty senates, and the president of the Florida student association are also members of the board. *Id.*; § 1001.70, Fla. Stat. The commissioner of education is appointed by the State Board of Education. Art. IX, § 2, Fla. Const.

6

This Court rejected the students' "*de facto* causality" argument and dismissed the Governor:

> [T]he proper defendants, in their official capacities, are officials who could remedy the violation at issue, if ordered to do so. Here, that means the members of the Board of Governors—all of them—and perhaps, when acting at the direction of the Board of Governors, the Chancellor. The Commissioner of Education is a proper defendant only in his capacity as a member of the Board of Governors. **The Governor appoints members of the Board and recommends courses of action, often successfully, but he has no direct authority to take remedial action of the kind the plaintiffs seek. He is not a proper defendant.**

*Id.* ECF 65, at *3-4 (N.D. Fla. June 12, 2023) (citation omitted) (emphasis added).

So too here. While the Governor appoints members to the Board of Governors[6] and occasionally recommends courses of action to the Chancellor, Chancellor Rodrigues's decisions are his own—they are neither traceable to nor redressable by the Governor. Plaintiff's contrary interpretation "would eviscerate the long-standing rule in our Circuit—which is that, 'when a plaintiff challenges the constitutionality of a rule of law, it is the state official designated to enforce that rule who is the proper defendant.'" *Farmworker Ass'n*, 2023 WL 8878306, at *10 (quoting *ACLU v. The Fla. Bar*, 999 F.2d 1486, 1490 (11th Cir. 1993)).

As Judge Hinkle further observed in *Denton*, it changes nothing whether the Governor takes credit for influencing actions taken by other public officers. The District Court for the Southern District of Florida came to the same conclusion in its

---

[6] The Chancellor is appointed by the Board of Governors. § 20.155(3), Fla. Stat.

recent decision in *Farmworker Association*: "[W]e decline the Plaintiffs' invitation to use the Governor's 'championing' of the statute as evidence of his power to enforce it. Nor would any such rule make any sense . . . . [A] governor's decision to advocate for a particular policy outcome—whether good or bad, smart or unwise—tells us nothing about his authority to enforce that policy[.]"). 2023 WL 8878306, at *10-11 (citing *ACLU v. The Fla. Bar*, 999 F.2d 1486, 1490 (11th Cir. 1993); *Disability Rights S.C. v. McMaster*, 24 F.4th 893, 901 (4th Cir. 2022) (holding plaintiffs lacked standing to sue the Governor of South Carolina to challenge the Superintendent of Education's implementation of a facemask law as articulated by a memorandum she sent to local school districts, despite the fact that the governor had "publicly advocated" for the enforcement described in the memorandum)); *see also Common Cause Fla. v. DeSantis*, No. 4:22-cv-109-AW-MAF, 2022 WL 19978293, at *3 (N.D. Fla. Nov. 8, 2022) ("The lower federal courts have consistently held or recognized that governors cannot be sued under *Ex Parte Young* just because they have . . . publicly endorse[d] and defend[ed] the challenged scheme."); *Support Working Animals v. Governor of Fla.*, 8 F.4th 1198, 1204 (11th Cir. 2021) (holding that the Attorney General's public support for the challenged statute did not "satisfy the traceability requirement"). This rule exists for good reason, as one can imagine the obvious separation of powers concerns posed by a court order purporting to tell a governor when and how he may engage in advocacy with other public officials. In conclusion, *Bennett* leaves Plaintiff far short of meeting its burden to

establish traceability and redressability.[7]

## II. Plaintiff Has Waived Any Argument That the Governor Is Not a Redundant Defendant.

While the Response attempts to counter the argument that Chancellor Rodrigues is a redundant defendant, *see* Response at 9, it does not dispute that the Governor is a redundant defendant. A plaintiff's failure to address an argument raised in a motion to dismiss waives opposition to it. *See, e.g.*, *Sammons v. Sonic-N. Cadillac, Inc.*, No. 607CV277ORL19DAB, 2007 WL 2298032, at *2 n.2 (M.D. Fla. Aug. 7, 2007) ("[P]laintiff's failure to raise a legal argument on a theory in response to the defendant's motion to dismiss for failure to state a claim operated as a waiver of that argument.") (citing *Lekas v. Briley*, 405 F.3d 602, 614-15 (7th Cir. 2005) ("Our system of justice is adversarial and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.")); *Sabino v. Kerzner Int'l Bahamas Ltd.*, No. 12-22715-CIV, 2014 WL 11878359, at *2 (S.D. Fla. July 8, 2014) ("Plaintiff has waived this argument by failing to raise it in response to the motion to dismiss."); *MSPA Claims 1, LLC v. First Acceptance Ins. Co.*, No. 16-20314-CIV, 2017 WL 3671033, at *4 (S.D. Fla. Aug. 24, 2017) ("Plaintiff failed to

---

[7] The Response contains little discussion of sovereign immunity, other than admitting that Article III imposes a higher bar for plaintiffs than the Eleventh Amendment. Response at 25-26 (citing *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015)); *see also Falls*, 2022 WL 19333278, at *1 (observing that "the *Ex parte Young* analysis is, if anything, more lenient than Article III's traceability requirement").

present these arguments in response to Defendant's motion to dismiss, so these arguments are waived."); *Williams v. Bank of Am. Corp.*, No. 3:15-CV-1449-J-39MCR, 2019 WL 4016474, at *1 (M.D. Fla. July 30, 2019) ("Plaintiff does not address the merits of Defendants' Motion; as such, he has waived any substantive objections thereto.").

Because Plaintiff waived the argument that an order enjoining the University from enforcing the Memorandum would not provide it complete relief, "[t]he prudent course here is to dismiss the Governor," whether he is a proper defendant or not. *Brenner v. Scott*, 999 F. Supp. 2d 1278, 1286 (N.D. Fla. 2014) (citing *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991)); *see also Honeyfund.com, Inc. v. DeSantis*, 622 F. Supp. 3d 1159, 1174 (N.D. Fla. 2022) (dismissing the Governor because "even if Plaintiffs had standing to sue the Governor, an order directed to the [Florida Commission on Human Relations] . . . would be sufficient to provide complete relief").

## CONCLUSION

Plaintiff has fallen far short of its burden to establish Article III standing. In any event, Plaintiff has made no attempt to rebut the argument that the Governor is a redundant party. For these reasons, and those made in the Governor's Motion to Dismiss, the Governor should be dismissed with prejudice.

Dated: January 23, 2024,          Respectfully submitted,

                                         **RON DESANTIS**
                                         *Governor*

                                         /s/ *Nicholas J.P. Meros*
                                         NICHOLAS J.P. MEROS (Fla. Bar #120270)
                                         *Deputy General Counsel*
                                         SAMUEL F. ELLIOTT (Fla. Bar #1039898)
                                         *Assistant General Counsel*

                                         **EXECUTIVE OFFICE OF THE GOVERNOR**
                                         The Capitol, PL-5
                                         400 S. Monroe Street
                                         Tallahassee, FL 32399
                                         Phone: (850) 717-9310
                                         Facsimile: (850) 488-9810
                                         Nicholas.Meros@eog.myflorida.com
                                         Samuel.Elliott@eog.myflorida.com

                                         *Counsel for Governor Ron DeSantis*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Pursuant to N.D. Fla. Local Rule 7.1(F), I hereby certify that this Motion complies with the Rule's font requirements and contains 3,176 words, exclusive of the case style, signature block, and any certificate of service.

                                                     /s/ *Nicholas J.P. Meros*
                                                     Deputy General Counsel

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the Court's CM/ECF system, which provides notice to all parties, on January 23, 2024.

/s/ *Nicholas J.P. Meros*
Deputy General Counsel