**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

**STUDENTS FOR JUSTICE IN PALESTINE**
**AT THE UNIVERSITY OF SOUTH FLORIDA,**

      *Plaintiff,*

v.                              **Case No.: 1:23cv281-MW/HTC**

**RONALD DESANTIS, et al.,**

      *Defendants.*
_____/

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

On October 24, 2023, less than three weeks after Hamas's horrific attack on Israel and a spike in antisemitic hate crimes throughout the United States, the Chancellor of the Board of Governors sent a memorandum to each university president in the State University System, including Defendant Rhea Law, President of the University of South Florida. The memorandum described Hamas's attack and linked Hamas's actions to an organization called the National Students for Justice in Palestine, based on statements that the national organization made in response to events in Israel. The Chancellor cited Florida's criminal law against providing material support to designated foreign terrorist organizations and implied that the national organization violated that statute based on its statements. The Chancellor then identified two student chapters of Students for Justice in Palestine that exist as

registered student organizations at two of Florida's state universities. One of those chapters is Plaintiff, Students for Justice in Palestine at the University of South Florida. The Chancellor incorrectly described these student chapters as "active National SJP Chapters" that "exist under the headship of the National Students for Justice in Palestine." ECF No. 1-1 at 1. In **bold**, the Chancellor stated: "**Based on the National SJP's support of terrorism, in consultation with Governor DeSantis, the student chapters must be deactivated.**" *Id*.

A week after the Chancellor sent his memorandum, he addressed the matter again at a Board of Governors (BOG) meeting on November 9, 2023. At the meeting, the Chancellor indicated that the student chapters of the Students for Justice in Palestine, including Plaintiff, have constitutions that clearly state that their organizations are *not* subservient to or under the control of the national organization, as he had suggested in his memorandum. He also indicated that officials at the University of South Florida had sought their own legal opinion about deactivating Plaintiff and the opinion raised concerns that officials at the University of South Florida could be exposed to personal liability if they deactivated Plaintiff consistent with Defendant Rodrigues's memorandum.

Plaintiff filed suit about two weeks after this BOG meeting. ECF No. 1. Without dispute, the University of South Florida has not deactivated Plaintiff as a registered student organization. But Plaintiff asks this Court to decide whether this

memorandum and the threat of deactivation that this memorandum arguably represents violates Plaintiff's First Amendment rights to free speech and association.

Before this Court can reach the weighty constitutional question Plaintiff poses, this Court must first satisfy itself that Plaintiff is substantially likely to establish standing for purposes of a preliminary injunction. This Court heard Plaintiff's motion for preliminary injunction on January 26, 2024. For the reasons set out below, this Court concludes that Plaintiff has failed to demonstrate a substantial likelihood of establishing standing, and thus, Plaintiff is not entitled to preliminary injunctive relief.

I

Under Rule 65 of the Federal Rules of Civil Procedure, a district court may grant a preliminary injunction "only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam). Although a "preliminary injunction is an extraordinary and drastic remedy," it nonetheless should be granted if "the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *United States v. Jefferson Cty.*, 720 F.2d 1511, 1519 (11th Cir.

3

1983) (quoting *Canal Auth. v. Callaway*, 489 F.2d 567, 573 (11th Cir. 1974)). None of these elements, however, is controlling; rather, this Court must consider the elements jointly, and a strong showing of one element may compensate for a weaker showing of another. *See Fla. Med. Ass'n, Inc. v. U.S. Dep't of Health, Educ. & Welfare*, 601 F.2d 199, 203 n.2 (5th Cir. 1979).

This Court begins with whether Plaintiff has shown a substantial likelihood of success on the merits. This Court addresses this factor first because, typically, if a plaintiff cannot "establish a likelihood of success on the merits," this Court "need not consider the remaining conditions prerequisite to injunctive relief." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002). And because standing is always "an indispensable part of the plaintiff's case," this Court begins its merits analysis with standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

A

Standing is not just some technical hurdle—it concerns a fundamental question about whether this Court has jurisdiction to hear Plaintiff's constitutional claim. Any evaluation of Plaintiff's claim, thus, necessitates an inquiry into Plaintiff's ability to bring such a claim. Accordingly, this Court first considers

whether Plaintiff has met its affirmative burden to demonstrate a substantial likelihood of success in establishing standing against each Defendant in this case.[1]

Over time, the Supreme Court has developed a three-part test for determining when standing exists. Under that test, a plaintiff must show (1) that they have suffered an injury-in-fact that is (2) traceable to the defendant and that (3) can likely be redressed by a favorable ruling. *See Lujan*, 504 U.S. at 560–61. And "where a plaintiff moves for a preliminary injunction, the district court . . . should normally evaluate standing 'under the heightened standard for evaluating a motion for summary judgment.' " *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 255 n.3 (6th Cir. 2018) (quoting *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 912 (D.C. Cir. 2015)); *see also Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011). Thus, "a plaintiff cannot 'rest on such mere allegations, [as would be appropriate at the pleading stage] but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true.' " *Cacchillo*, 638 F.3d at 404 (some alteration in original) (quoting *Lujan*, 504 U.S. at 561). And at the preliminary-injunction stage, this Court need not accept Plaintiff's allegations as true or draw all reasonable inferences in Plaintiff's favor.

---

[1] Although the USF BOT Defendants and President Law have remained silent in this case, this Court also considers whether Plaintiff has standing to proceed against them, including but not limited to whether Plaintiff has standing for purposes of a preliminary injunction, given this Court's "independent obligation . . . to examine its own jurisdiction . . . at each stage of the proceedings, even if no party raises the jurisdictional issue . . . ." *Hallandale Prof. Fire Fighters Local 2238 v. City of Hallandale*, 922 F.2d 756, 759 (11th Cir. 1991).

*See New Hope Family Servs., Inc. v. Poole*, 966 F.3d 145, 165 (2d Cir. 2020). With these principles in mind, this Court turns to the record to determine whether Plaintiff has clearly carried its burden to demonstrate a substantial likelihood of establishing standing, starting with whether there is a substantial likelihood that Plaintiff can demonstrate an injury-in-fact within the meaning of the law.

B

Plaintiff points to the threat of deactivation, its members' and prospective members' chilled speech, and "reputational harm" as injuries for purposes of standing. *See* ECF No. 39 at 17; ECF No. 67 at 14–17. "To have standing, 'a plaintiff must have suffered or be imminently threated with a concrete and particularized injury in fact . . . .' " *Dream Defenders v. Gov. of the State of Fla.*, 57 F.4th 879, 886 (11th Cir. 2023). "A threat of future injury is sufficient to establish standing when 'the threatened injury is certainly impending or there is a substantial risk that the harm will occur.' " *Id*. (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). But where there is a "sequence of uncertain contingencies involving multiple independent actors . . . that must occur before" Plaintiff's members would experience the threatened harm, Plaintiff is unlikely to demonstrate a substantial likelihood that the threat is imminent. *Id*. at 888. In addition, " 'an actual injury can exist when the plaintiff is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences.' " *Wilson v. State*

6

*Bar of Ga.*, 132 F.3d 1422, 1428 (11th Cir. 1998) (quoting *N. H. Right to Life Pol. Action Comm. v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996)). "In such an instance, . . . the injury is self-censorship." *Id*. (citing *ACLU v. The Fla. Bar*, 999 F.2d 1486, 1492 (11th Cir. 1993)). Finally, reputational injury can also be a cognizable injury-in-fact when properly supported by facts in the record. *See Meese v. Keene*, 481 U.S. 465, 473 (1987) (finding that plaintiff had established cognizable injury based on uncontradicted affidavits demonstrating that "his personal, political, and professional reputation would suffer and his ability to obtain re-election and to practice his profession would be impaired," due to government's characterization as "political propaganda" with respect to films plaintiff wished to exhibit).

To start, this Court recognizes that it is limited to the record before it in ruling on Plaintiff's motion. And the parties were free to develop this record ahead of the hearing. Indeed, this Court adopted the parties' proposed briefing schedule, accommodated requests to exceed word limits, and did not limit either side in calling live witnesses at the hearing. *See, e.g.*, ECF No. 55. This Court notes this up top to emphasize it is Plaintiff's burden to demonstrate standing and, as the case law teaches, establishing standing is dependent on the unique facts and context of each case. There need not be a case directly on point—instead, this Court looks to both established principles from the cases that govern its analysis and the unique facts of this case to determine whether Plaintiff has met its burden.

This Court began the hearing on Plaintiff's motion by determining which Defendants have legal authority to take certain actions. This consideration is not determinative of Plaintiff's standing, but it is certainly relevant. Both sides agree that, ultimately, the USF Board of Trustees (BOT) is the entity responsible for directly regulating registered student organizations.

Neither the Governor, nor the Chancellor, nor the BOG have the formal power to punish student organizations. The BOG has delegated such regulatory authority to the Boards of Trustees of its constituent universities and both sides agree it has taken no steps to officially wrest back control. And as for the BOT, this Court finds, based on the record, that at the time of filing, the University of South Florida had taken no steps to deactivate Plaintiff following advice from outside counsel suggesting that deactivation would risk opening the BOT members to personal liability. *See* https://thefloridachannel.org/videos/11-9-23-florida-board-of-governors-meeting/ (Nov. 9, 2023 Bd. of Govs. Meeting at 2:31-2:34) (last visited Jan. 30, 2024).

This Court pauses to reiterate that it has reviewed Plaintiff's declarations in detail. Plaintiff proffered four declarations from four different student members, but each of the declarations is nearly identical with respect to content. *See* ECF No. 36. Upon review of these declarations, this Court notes that although the BOT has not taken steps to deactivate Plaintiff, there is evidence permitting a reasonable inference

that the University responded in some way to the Chancellor's memorandum. Specifically, Plaintiff's members each attest to the fact that about a week after the Chancellor issued his memorandum, the USF Dean of Students reached out to Plaintiff to ask if the organization "would consider changing its name to allay concerns about the organization." ECF No. 36 at 14. But Plaintiff's members "declined that request." *Id*. Full stop. That is the extent to which Plaintiff's evidence demonstrates a direct response from the University based on the memorandum.

Plaintiff's declarations do not say that Plaintiff's members were threatened with any consequences in declining to change their organization's name. Nor does Plaintiff's evidence demonstrate that the University's actions suggested to Plaintiff's members that the "request" was not voluntary. Moreover, Plaintiff has not proffered any evidence to support a finding that the University has taken any further action after this request to change names on October 31, 2023. Instead, based on the recording of the November 9th meeting, this Court infers that following the transmission of the Chancellor's memorandum, officials at the University of South Florida communicated to the Chancellor that his facts were wrong—the University had investigated and learned that Plaintiff is fully autonomous from the national SJP organization—and that the BOT had "liability concerns" with respect to deactivation. Based on the all the evidence in the record before me, it would be unreasonable to infer that the BOT plans to deactivate Plaintiff consistent with the

9

Chancellor's memorandum. In short, this Court finds that the University does not intend to deactivate Plaintiff pursuant to the memorandum.

Nonetheless, even if the BOT has not taken action to deactivate Plaintiff, Plaintiff asserts that the other Defendants need not have the formal power to punish registered student organizations for Plaintiff to have standing against them. As a general legal principle, Plaintiff is correct. At the hearing, much discussion was had regarding Judge Newsom's opinion discussing and applying this principle in *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1120 (11th Cir. 2022). But the general principle does not insulate Plaintiff from its burden to come forward with evidence demonstrating a cognizable constitutional injury in the first instance.

In *Speech First*, the Eleventh Circuit held that the district court erred in concluding that the student speech at issue was not reasonably chilled because those students faced no credible threat of enforcement where the task force responsible for implementing the challenged university policy had no authority to discipline students. Whether the student's speech was, in fact, chilled was not in dispute in *Speech First*. Indeed, the verified amended complaint in that case included dozens of factual allegations describing the ways in which the organization's student members were self-censoring under the challenged policy. *See* Amended Complaint at 22–33, *Speech First, Inc. v. Cartwright*, Case No.: 6:21cv313-GAP-GJK (M.D. Fla. Mar. 27, 2021), ECF No. 30. Ultimately, the question on appeal was whether

10

the students' self-censorship was objectively reasonable. In answering this question in the affirmative, the Eleventh Circuit determined that notwithstanding the task force's inability to directly discipline students for violating the challenged policy, a reasonable college student would be intimidated by subjection to the policy and the task force's role in enforcing it. 32 F.4th at 1124.

Plaintiff hangs its hat on Judge Newsom's conclusion that "[b]ecause the [challenged] policy objectively chills student speech, Speech First's members have standing to challenge it." *Id*. But, again, this conclusion was not premised on some hypothetical chill. Instead, Speech First's standing was based on a record with dozens of sworn factual allegations demonstrating that the organization's members were actually self-censoring for fear of violating the challenged policy.

Here, on the other hand, the record is devoid of any evidence that Plaintiff's members or prospective members have self-censored. Indeed, this Court asked Plaintiff's counsel on the record at the hearing to identify "specific allegations or facts through declarations and/or complaints that puts meat on the bones as to what the fear is causing somebody to do or not do." Tr. at 51–52. Plaintiff's counsel responded that paragraphs ten through twelve of their declaration from member Hadeel Ibrahim permit the reasonable inference that Plaintiff's members have "both limited their activity and adjusted what—their statements in response to the threat from the Governor or the—Chancellor Rodrigues." *Id*. at 52. That is, the only

11

evidence that Plaintiff identifies to demonstrate that its members' or prospective members' speech or association is chilled are the statements that (1) Plaintiff has "officially hosted only one on-campus event—a bake sale," since the beginning of the Fall 2023 semester, (2) Plaintiff "has not organized protests or any other activities," since the beginning of the Fall 2023 semester, and (3) Plaintiff "has taken public steps to explain that its goal is to 'promote peace' and that USF SJP 'condemns all forms of violence,' " in the wake of events in Israel, Gaza, and the West Bank on October 7, 2023. *See* ECF No. 36 at 12–13.

But Plaintiff's evidence falls short of demonstrating that the organization and its members have self-censored in response to either the Chancellor's memorandum or any fear of punishment connected to the memorandum. Plaintiff proffers only that the organization has had one on-campus event during the Fall 2023 semester. However, Plaintiff has not offered any explanation or other facts to demonstrate why Plaintiff has only held one on-campus event for the Fall 2023 semester. Nor has Plaintiff pointed to any evidence that the organization either did not plan any more events or cancelled pre-planned events because of their fears of deactivation or punishment. Instead of taking the time to draft declarations that demonstrate that Plaintiff's members have, in fact, self-censored, Plaintiff asks this Court to infer facts that have no basis in the record.

Moreover, Plaintiff's own evidence contradicts the assertion that Plaintiff only held one on-campus event last semester. Specifically, Plaintiff attached an exhibit to its complaint that shows Plaintiff co-sponsored another event in November *after* the Chancellor issued his memorandum. *See* ECF No. 1 at 23–24 (Instagram post of event poster for event on November 14, 2023, called "Tear Down the Apartheid Wall! A Demonstration for Palestinian Liberation," cosponsored by Plaintiff and other student organizations). Given Plaintiff's own evidence of co-hosting an event in November, this Court rejects Plaintiff's suggestion that it should infer that Plaintiff's members are self-censoring based on the fear of either deactivation or criminal investigation.

Similarly, Plaintiff's own evidence suggests that its attempt to explain its position on violence was not motivated by the Chancellor's memorandum. Again, Plaintiff attached to its complaint an Instagram post of Plaintiff's "Official Statement" regarding the use of violence which has a date-stamp that predates the Chancellor's memorandum. *See* ECF No. 1 at 26 (Instagram post of "official statement" from Plaintiff's Instagram page, dated October 18, 2023, attached to complaint). This evidence only undermines the argument that Plaintiff has had to explain its position on violence *because of* the Chancellor's memorandum.

And to the extent Plaintiff asserts its members or prospective members are chilled due to the threat of punishment or criminal investigation, the record

demonstrates that such fears are not reasonable. In addition to failing to identify evidence of chilled speech or association, Plaintiff has proffered no evidence to raise a reasonable inference that any criminal investigation or prosecution is imminent.[2] This might have been a different case had Plaintiff presented testimony from members demonstrating an unusually pronounced law enforcement presence at their meetings following the memorandum or requests for voluntary questioning concerning their organization's activities. Such evidence might demonstrate that authorities were indeed acting in furtherance of the coercive threats from the Governor or the Chancellor. But those are not the facts before me.

In short, absent additional facts demonstrating how Plaintiff's evidence is connected to the organization's response to the memorandum, this Court cannot find that anyone is self-censoring. Indeed, at the hearing, Plaintiff's counsel appeared to recognize that they had failed to make a record that could reasonably support the inference that Plaintiff had asked this Court to draw with respect to chill. *See* Tr. at 64 ("[Y]ou know, if the PI turns on, like, these types of declarations, you know, we can . . . put in clarified or new declarations."). This Court cannot rewrite Plaintiff's declarations to help Plaintiff meet its burden.

---

[2] This also begs the question of whether Plaintiff's asserted chill based on some fear of criminal prosecution could even be redressed with an injunction against the Governor, the BOG, or the BOT Defendants, when the law enforcement officials who would ultimately conduct such an investigation are not parties to this action, nor would they be bound by an injunction against the Defendants in this case.

Finally, this Court notes that Plaintiff has not demonstrated a cognizable injury of "reputational harm." Indeed, Plaintiff's complaint appears to frame the injury as a "diversion of resources," rather than "reputational harm." *See* ECF No. 1 ¶ 57 ("USF SJP has been forced to divert time and resources to defending its reputation and trying to vindicate its constitutional rights rather than focusing on its mission."). But there is zero record evidence to support a diversion-of-resources theory of injury for purposes of granting preliminary injunctive relief.

And with respect to "reputational harm," Plaintiff has neither alleged nor provided any evidence demonstrating that its reputation has, in fact, been harmed by Chancellor's memorandum and its alleged "defamatory imputation that USF SJP has provided material support or is affiliated with organizations providing material support to terrorists . . . ." *Id*. Instead, Plaintiff alleges only that it has had to divert resources to defend its reputation. Nonetheless, Plaintiff argues in conclusory fashion that its reputation has been harmed, therefore it has suffered an injury-in-fact. *See* ECF No. 67 at 17. But "naked assertions of reputational harm fall short of plausibly establishing injury." *McNaught v. Nolen*, 76 F. 4th 764, 771 (8th Cir. 2023) (citation and internal quotation marks omitted). Instead, "a plaintiff alleging reputational harm must show *how* the defendant's actions harm her reputation." *Id*. at 772. For example, in *Meese*, the case Plaintiff cites in support of its asserted injury, the plaintiff established that he faced "reputational harm" based on uncontradicted

affidavits, "including one describing the results of an opinion poll and another containing the views of an experienced political analyst," which supported "the conclusion that his exhibition of films that have been classified as 'political propaganda' by the Department of Justice would substantially harm his chances for reelection and . . . his reputation in the community." *Meese*, 481 U.S. at 473–74.

Here, on the other hand, Plaintiff's evidence in support of its motion for preliminary injunction does not permit a reasonable inference that Plaintiff's reputation has suffered because of the Chancellor's memorandum. To the contrary, Plaintiff's declarations demonstrate that Plaintiff's online Instagram following has essentially doubled since October 7, 2023. *Id*. at 5.

Further, to the extent Plaintiff asserts it has been forced to defend its reputation by issuing a public statement regarding its position on the use of violence, Plaintiff again relies upon evidence of a public statement that, as this Court has already noted, *predates* the Chancellor's memorandum by almost a week. *See* ECF No. 1 at 26 (Instagram post of "Official Statement," dated October 18, stating, among other things, that "We would like to address that our organization promotes peace and condemns all forms of violence.").

In short, the limited facts Plaintiff relies upon—namely, that (1) Plaintiff's online following doubled around the same time the Chancellor issued his memorandum and (2) Plaintiff issued a public statement a week before the

16

Chancellor issued his memorandum—do not permit a reasonable inference that Plaintiff's reputation has been harmed. Accordingly, this Court finds that Plaintiff has not met its burden to establish an injury-in-fact with respect to "reputational harm."

This Court does not fault Plaintiff's members for feeling anxious about the fact that the Governor—arguably the most powerful man in Florida—has repeatedly disparaged Plaintiff's members as "terrorists" who support "jihad" and repeated the falsehood that their organization has been "deactivated." But this Court rejects counsel's suggestion that it should find, in the absence of other evidence, that Plaintiff has standing simply because someone cloaked with great power makes coercive statements that cause college students to fear some hypothetical future harm. Plaintiff's argument stretches the injury-in-fact requirement beyond the boundaries that case law has established for standing in First Amendment pre-enforcement challenges. This Court is not free to exceed those boundaries.

Simply put, Plaintiff has failed to demonstrate a substantial likelihood of establishing an injury-in-fact. Plaintiff's evidence falls short of demonstrating reputational harm or that any member's or prospective member's speech or association is reasonably chilled—or chilled at all—for fear of punishment. Indeed, as noted on the record at the hearing, this might also be a different case if the facts demonstrated that the threat of deactivation was accompanied by evidence of some

action in furtherance of it. If Plaintiff could point to evidence that the University was taking actions to circumvent its normal procedures for disciplining student organizations following the memorandum, this might also demonstrate that these administrators were cowed by the memorandum and its threat of adverse employment actions for failing to deactivate Plaintiff. But, again, those are not the facts before me.

In short, the record demonstrates that neither deactivation nor criminal investigation is imminent. Instead, this Court finds that no actions have been taken in pursuit of deactivation under the Chancellor's memorandum. And, as this Court has already found, the Defendants with legal authority to directly regulate registered student organizations do not intend to deactivate Plaintiff. The Chancellor has switched tactics from deactivation to other actions the University might take in lieu of deactivation—but Plaintiff has proffered no record evidence demonstrating that the University of South Florida has taken any action based on the Chancellor's statements on November 9th. The Chancellor has also acknowledged that the premise upon which his memorandum is based—that Plaintiff is under the "headship" or control of the national SJP organization—is false, and thus, it is not clear whether the memorandum even continues to apply to Plaintiff.

Ultimately, the evidence before this Court demonstrates that "deactivation" remains simply an amorphous threat contingent upon either the BOT reevaluating

its aversion to possibly incurring personal liability or the BOG taking some action to pass a new regulation to take back its delegation of authority over student organizations. Absent any evidence to suggest either of these future contingencies are imminent, the asserted injury of threatened deactivation remains merely speculative.

For these reasons, this Court finds that Plaintiff has not met its burden to demonstrate a substantial likelihood of establishing standing for purposes of a preliminary injunction.[3] Accordingly, Plaintiff's motion, ECF No. 38, is **DENIED** with respect to all Defendants. Because Plaintiff lacks standing for purposes of the motion for preliminary injunction, this Court does not have jurisdiction to rule on the merits of its First Amendment claim.

**SO ORDERED on January 31, 2024.**

s/Mark E. Walker                                      
**Chief United States District Judge**

---

[3] Defendants raise additional arguments concerning the justiciability of Plaintiff's claim. This Court need not address each argument in full—although this Court recognizes that some of these asserted deficiencies preclude preliminary injunctive relief. For instance, Plaintiff has not demonstrated how an injunction against the Governor would redress its asserted injuries when the Governor has neither the legal authority to discipline student organizations nor the ability to retract the Chancellor's memorandum.